**Howard WOOL, Plaintiff-Appellant,**

**v.**

**TANDEM COMPUTERS INCORPORATED, Robert C. Marshall, Henry V. Morgan, and James G. Treybig, Defendants-Appellees.**

**No. 85–2674.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1986.

Decided June 3, 1987.

Jack Corinblit and Marc M. Seltzer, Los Angeles, Cal., Judah I. Labovitz, Susanna E. Lachs, and Michael P. Coughlin, Philadelphia, Pa., and Bruce G. Stumpf, New York City, for plaintiff-appellant.

William I. Edlund, Robert M. Westberg, and John F. McLean, San Francisco, Cal., for defendants-appellees.

Before CHOY, Senior Circuit Judge, GOODWIN and PREGERSON, Circuit Judges.

CHOY, Senior Circuit Judge:

This action was brought by appellant Howard Wool ("Wool"), on behalf of himself and a class of persons similarly situated, to recover damages for alleged fraud and

breach of fiduciary duties in violation of, inter alia, federal securities laws and California common law.

The defendants are: Tandem Computers Incorporated ("Tandem") and three individuals who served as Tandem officers during the relevant period—James G. Treybig ("Treybig"), Robert C. Marshall ("Marshall"), and Henry V. Morgan ("Morgan"). (Treybig, Marshall, and Morgan collectively: the "individual defendants.")

In district court, Wool alleged that Tandem and the individual defendants had utilized improper accounting practices and issued public reports which overstated the profits of Tandem and which, in turn, artificially inflated the market price of Tandem securities. Wool and the class members purchased Tandem stock during the alleged inflation.

On April 30, 1985, the district court dismissed without prejudice Wool's claim against the individual defendants. On July 24, 1985, the remaining defendant, Tandem, filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. On September 11, 1985, the district court refused Wool's request for a continuance of the summary judgment hearing pursuant to Fed.R.Civ.P. 56(f), and granted summary judgment for Tandem. The district court also entered judgment dismissing the action. Wool timely appeals. We reverse and remand.

## FACTS

Tandem is engaged in developing, manufacturing, marketing, and servicing multiple processor computer systems. Tandem's sales process begins when Tandem enters into a signed sale contract with a customer, and ends when the contracted item is shipped and installed. Under Generally Accepted Accounting Principles, sale revenue may be recognized only when: 1) the earning process is complete or virtually complete, and 2) an exchange has taken place. Under Tandem's own auditing committee standard, sale revenue may be recognized in any given quarter if: 1) the equipment has been shipped to the custom-

er, 2) the shipment is accompanied by a signed customer purchase order or contract, and 3) the installation of the equipment at the customer site is planned to begin within 60 days of the quarter's end.[1]

From the second through fourth fiscal quarter of 1982, Tandem improperly recognized significant amounts of revenue. Tandem's management, toward the end of each quarter, authorized shipments of equipment to carrier warehouses even though material conditions of sale remained unsatisfied. Tandem's employees prepared shipping documents which, on their face, indicated direct shipment to customers. In reality, the supposedly "sold" equipment was merely transferred to a warehouse and remained under Tandem's control. These and other practices permitted Tandem to book revenue from incomplete sales.

Tandem's revenue and net income for the second through fourth quarters of 1982 were materially lower than as reported and stated in the following press releases and Forms 10-Q: 1) press release of April 28, 1982, and Form 10-Q of May 6, 1982, announcing and reporting Tandem's revenue for the quarter ending March 31, 1982; 2) press release of July 29, 1982, and Form 10-Q of August 9, 1982, announcing and reporting Tandem's revenue for the quarter ending June 30, 1982; and 3) press release of November 2, 1982, announcing Tandem's revenue for the quarter ending September 30, 1982.

On December 8, 1982, Tandem publicly announced a restatement of its fiscal year 1982 revenue from $335,899,000 to $312,143,000 and a restatement of 1982 earnings from $37,283,000 to $28,856,000. Following the announcement, the price of Tandem stock fell $5.75 from the previous day.

On October 2, 1984, the Securities and Exchange Commission (the "SEC") filed a complaint for a permanent injunction against Tandem and the individual defendants. The SEC complaint alleged that beginning in the second quarter and continuing through the fourth quarter of fiscal year 1982, Tandem had engaged in improp-

---

**1.** Tandem adopted this third precondition on July 1, 1982.

er accounting practices which caused material changes in Tandem's reported profits.

On the basis of the SEC's allegations, Wool brought this action on October 23, 1984, as a class action on behalf of all persons who purchased Tandem stock from April 28, 1982, through December 8, 1982, inclusive. Wool personally purchased 2,000 shares of Tandem stock on July 9, 1982, at $17.75 per share, and sold them on August 19, 1982, at $16.63 per share.

## ISSUES

Wool claims on appeal that:

1) The district court erred in granting summary judgment against Wool for failure to establish the requisite injury to entitle him to relief under section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act") and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder.

2) The district court erred in granting summary judgment against Wool in regard to his claims of common law fraud and negligent misrepresentation.

3) The district court erred in dismissing Wool's claims against the individual defendants for failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b).

4) The district court erred in dismissing Wool's claims against the individual defendants as "controlling persons" of Tandem under section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a).

## DISCUSSION

### I.

### *Section 10(b) and Rule 10b–5 Claims*

Wool argued below that Tandem and the individual defendants violated section 10(b) of the 1934 Act and Rule 10b–5. The district court dismissed Wool's claim against the individual defendants. The remaining defendant, Tandem, contended, and the district court concluded, that there was no genuine issue of material fact because Wool as a matter of law did not suffer any injury.

We review de novo the district court's grant of summary judgment in favor of Tandem regarding Wool's section 10(b) and Rule 10b–5 claims. *See Plaine v. McCabe*, 797 F.2d 713, 716–17 (9th Cir.1986). Summary judgment is appropriate when the moving party demonstrates that there is no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* As to genuineness, the threshold inquiry is "whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 2511; *see also Grigsby v. CMI Corp.*, 765 F.2d 1369, 1373 (9th Cir.1985).

We disagree with the district court's conclusion that Wool presented no genuine issue of material fact. First, the out-of-pocket measure of damages clearly establishes that Wool *in theory* may have suffered recoverable damages from the defendants' alleged fraudulent acts. Second, Wool submitted specific facts from which a reasonable jury, viewing the evidence in a light most favorable to Wool, could conclude that Wool *actually* suffered such recoverable damages.

### A. *Out-of-Pocket Measure of Damages*

■ In an action brought under Rule 10b–5 for a material omission or misstatement, the plaintiff must prove that the misrepresentation or omission caused the harm. *Hatrock v. Edward D. Jones & Co.*, 750 F.2d 767, 773 (9th Cir.1984). Both parties agree that the causation requirement is satisfied if Wool suffered recoverable damages as determined by the out-of-pocket rule set forth in *Blackie v. Barrack*, 524 F.2d 891, 908–09 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976), and *Green v. Occidental Petrole-*

*um Corp.*, 541 F.2d 1335, 1341–46 (9th Cir.1976) (Sneed, J., concurring).

■ The out-of-pocket rule measures the damages recoverable by an individual who because of fraud or misrepresentation has been injured by market transactions in an actively traded stock. The out-of-pocket rule fixes recoverable damages as "the difference between the purchase price and the value of the stock at the date of purchase." *Green*, 541 F.2d at 1344; *see Blackie*, 524 F.2d at 908; Note, *The Measure of Damages in Rule 10b–5 Cases Involving Actively Traded Securities*, 26 Stan.L.Rev. 371, 383 (1974).[2]

The following facts are undisputed: Wool bought his Tandem stock on July 9, 1982, and sold it on August 19, 1982. Tandem began publishing its allegedly overstated quarterly revenue figures before the date of Wool's purchase. Tandem subsequently confirmed these figures in the July 28, 1986, press release and the August 11, 1986, Form 10–Q. No other operating revenue or earnings figures were released by Tandem into the market during the time that Wool held his Tandem stock. Wool, therefore, is an "in-and-out" trader: one who purchased stock during the period of misrepresentation but sold it before any disclosure which either partially or completely corrected the misrepresentation.

■ Tandem contends that because Wool bought and sold his stock without any change in Tandem's publicly announced revenue figures, any alleged price inflation Wool paid was recouped by him on sale. Consequently, Tandem argues that Wool did not suffer any actual damages and therefore had no cause of action under federal securities law. The issue before us is whether an in-and-out trader, such as Wool, suffers recoverable damages under *Blackie* and *Green* only if there was a disclosure which either partially or completely corrected the specific misrepresentation at issue.

■ Both *Blackie* and *Green* recognize that the increment of artificial inflation caused by misrepresentations may fluctuate "as a result of market forces operating on the misrepresentations." *Green*, 541 F.2d at 1345; *see also Blackie*, 524 F.2d at 909 n. 25. Because market forces are independent of corrective disclosures, an in-and-out trader, such as Wool, may suffer recoverable damages under the out-of-pocket rule even in the absence of corrective disclosures.[3]

Indeed, in *Green*, Judge Sneed illustrates this very point. Assume the following: 1) Corporation X announces the discovery of oil when, in fact, no discovery was made at all; 2) the per share price of X increases by $10 after the announcement; 3) subsequent to the artificial inflation, Corporation Y discovers a massive reserve of oil; 4) the discovery causes the price of oil to decline; and 5) in response to the decline in the price of oil, the per share price of X decreases by $5. Although no disclosure has been made to correct the misrepresentation by Corporation X, an in-and-out trader who sold after the decline in the price of oil will nevertheless suffer a loss of $5. *See Green*, 541 F.2d at 1345–46 & nn. 6–10.[4]

2. According to Judge Sneed in *Green*, "[t]his difference is proximately caused by the misrepresentations of the defendant." *Green*, 541 F.2d at 1344. The guiding philosophy of the out-of-pocket theory of damages, therefore, is to award "not what the plaintiff might have gained, but what he has lost by being deceived into the purchase." *Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 303 F.2d 527, 533 (10th Cir.1962).

3. According to the court in *Blackie*, even a complete corrective disclosure may never eliminate the spread between the price and value of the security caused by the misrepresentations of the defendant. *Blackie*, 524 F.2d at 909 n. 25. This is because the prolonged nature of the fraud may have introduced other market variables which affected the amount the market reacted to the disclosure. *Id.*

4. Although this result is clear, it should be noted that Judge Sneed's application of the out-of-pocket theory of damages is inconsistent.

For purchasers who sell *after* a disclosure which completely corrected the misrepresentations of the defendant, damages are determined only at the *time of purchase*. For example, assume that the true value of a share of stock is $100. Following a false disclosure, the stock sells on the open market for $110. After a complete corrective disclosure, however, the market price of the stock drops to $80. If the

## B. Evidence of Recoverable Damages

In addition to arguing that he may *in theory* have suffered recoverable damages under the out-of-pocket rule, Wool submitted specific facts to the district court upon which a finder of fact could reasonably conclude that Wool *actually* suffered such recoverable damages. *See* Fed.R. Civ.P. 56(e) (party opposing motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial").

In his Memorandum in Opposition to Motion for Summary Judgment, Wool presented several specific facts which may have decreased the increment of artificial inflation caused by Tandem's alleged misrepresentation.

First, on July 15, 1982, six days after Wool's purchase, the *Wall Street Journal* published an article which suggested that "Tandem is having a harder time moving its product out" and predicted that "Tandem will report lower earnings, both this year and next, than Wall Street is currently anticipating."

Second, while no operating revenues or earnings figures were released by Tandem into the market during the time that Wool held his Tandem stock, in its press release of July 28, 1982, and Form 10–Q of August 11, 1982, Tandem acknowledged that its sales growth had slowed in some areas, that its profitability had declined, and that the effective income tax rate had substantially declined from the previous year.

Proceeding on the assumption that the allegations raised and the evidence presented by Wool are true, and resolving any ambiguities in Wool's favor, we conclude that a jury could readily find that the marketplace assimilated this information and thus diminished the inflation attributable to the alleged fraud. Consequently, Wool presented specific facts beyond mere pleadings showing that there is a genuine issue for trial. Accordingly, we reverse the district court's grant of summary judgment for Tandem.[5]

## II.

### Common Law Claims of Fraud and Negligent Misrepresentation

■ In the district court, Wool charged Tandem with common law fraud and negligent misrepresentation. Tandem moved for summary judgment, contending that Wool failed to establish the requisite "reliance" to recover under such theories. The district court granted summary judgment for Tandem. We reverse.

Neither the September 11, 1985, Order Granting Motion for Summary Judgment, nor the transcript of oral argument, indicates that the district court reached the "reliance" issue. Presumably Wool's pendent state law claims were dismissed because Wool failed to show that he suffered

---

purchaser sells the stock at $80 (after the complete corrective disclosure), the purchaser would recover only $10 as determined at the time of purchase, though his actual loss is $30. The out-of-pocket method, however, ignores such potential disparity.

For in-and-out traders, on the other hand, both the *time of purchase* and the *time of sale* are considered in determining recoverable damages. Assume again that the true value of a share of stock is $100. Following a false disclosure, the stock sells on the open market for $110. Thus, the damage suffered by the purchaser at the time of purchase is $10 per share. Assume further that market forces operating on the misrepresentation cause the market price of the stock to decrease from $110 to $105, while its value remains at $100. If the purchaser sold at $105 (before the complete corrective disclosure), the purchaser would nevertheless suffer a recoverable damage of $5. Instead of determining the damages at the date of purchase, therefore,

a two-step process is used when dealing with in-and-out traders. First, the spread between market price and value of the stock at the time of purchase is determined. When the purchaser sells the stock, the spread is again measured. If the spread has diminished, the purchaser would recover the differences.

5. In opposition to Tandem's Motion for Summary Judgment, Wool sought either a denial of the motion or a sixty day continuance pursuant to Fed.R.Civ.P. 56(f) in order to obtain expert evidence. The district court refused Wool's request and granted Tandem's motion for summary judgment. Because we have concluded that the district court erred in entering summary judgment for Tandem, we need not reach Wool's alternative contention that the district court abused its discretion in denying Wool's Rule 56(f) request for continuance.

recoverable damages under federal securities law. Accordingly, Wool's pendent state law claims should be reinstated along with the reinstatement of his federal claims.

## III.

### Rule 9(b) Motion

Wool argued below that the individual defendants violated federal securities law and committed fraud and negligent misrepresentation under California law. The individual defendants contended, and the district court concluded, that Wool's allegations against the individual defendants failed to satisfy the particularity requirement of Fed.R.Civ.P. 9(b).

We review de novo the district court's dismissal of Wool's claims against the individual defendants. *See Guillory v. County of Orange,* 731 F.2d 1379, 1381 (9th Cir.1984). In reviewing the motions to dismiss, "[a]ll the allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Plaine,* 797 F.2d at 723. "To dismiss, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Id.*

■ We disagree with the district court's conclusion that Wool failed to satisfy the particularity requirement of Rule 9(b). Rule 9(b), which applies to securities actions brought under Section 10(b) and Rule 10b–5, requires particularity in pleading the circumstances constituting fraud. *Semegen v. Weidner,* 780 F.2d 727, 734–35 (9th Cir.1985); *Gottreich v. San Francisco Investment Corp.,* 552 F.2d 866, 866 (9th Cir.1977).[6] But "pleading is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Semegen,* 780 F.2d at 735 (quoting *Gottreich,* 552 F.2d at 866). While mere conclusory allegations of fraud are insufficient, statements of the time, place and nature of the alleged fraudulent activities are sufficient. *Semegen,* 780 F.2d at 735; *Bosse v. Crowell Collier & Macmillan,* 565 F.2d 602, 611 (9th Cir. 1977).

Wool clearly pleaded facts with sufficient detail and particularity to allege fraud against Tandem. Nevertheless, the individual defendants argued that the allegations in Wool's complaint were insufficient against them because: 1) the allegations were based solely on information and belief; and 2) the activities of each of the individual defendants were not separately and specifically identified. Both contentions are without merit.

### A. Pleadings Based on Information and Belief

■ "Allegations of fraud based on information and belief usually do not satisfy the degree of particularity required under Rule 9(b)." *Zatkin v. Primuth,* 551 F.Supp. 39, 42 (S.D.Cal.1982); *see* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1298, at 416 & n. 94 (1969) [hereinafter Wright & Miller]. However, "the rule may be relaxed as to matters peculiarly within the opposing party's knowledge." 5 Wright & Miller, § 1298, at 416 & n. 95. Such "an exception exists where, as in cases of corporate fraud, the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing." *Zatkin,* 551 F.Supp. at 42. In such cases, the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts upon which the belief is founded. *Id.;* 5 Wright & Miller, § 1298, at 416 & n. 96; *see also McFarland v. Memorex Corp.,* 493 F.Supp. 631, 638–39 (N.D.Cal.1980), *reconsideration granted,* 581 F.Supp. 878 (N.D.Cal.1984).

■ Applying these principles to the complaint filed by Wool, we conclude that the particularity requirement of Rule 9(b) has been met. Although Wool's complaint is based on the SEC's allegations, the paragraphs alleging misleading statements,

---

6. Fed.R.Civ.P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

misrepresentations, and specific acts of fraud are very precise. Each alleged misstatement is identified by content, date, and the document or announcement in which it appeared. The complaint specified the exact dollar amount of each alleged overstatement, and the manner in which such representations were false and misleading.

### B. *Lack of Individualization*

The individual defendants also objected to the "all defendants" language of Wool's complaint for failing to attribute particular fraudulent statements or acts to each individual defendant.

In cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other "group-published information," it is reasonable to presume that these are the collective actions of the officers. *See Bruns v. Ledbetter*, 583 F.Supp. 1050, 1052 (S.D.Cal.1984); *Zatkin*, 551 F.Supp. at 42. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations. *See Bruns*, 583 F.Supp. at 1052; *Zatkin*, 551 F.Supp. at 42.

Wool clearly satisfied this requirement. The individual defendants are a narrowly defined group of officers who had direct involvement not only in the day-to-day affairs of Tandem in general but also in Tandem's financial statements in particular. During the period in question, Treybig, Marshall, and Morgan were the President/Chief Executive Officer, Senior Vice President/Chief Operating Officer, and Vice President/Controller of Tandem, respectively. We conclude that Wool pleaded each alleged misrepresentation with particularity, and, where possible, Wool has ex-

tended such particularity to the individual defendants.

## IV.

### *Controlling Person Liability*

In the court below, Wool alleged that the individual defendants were "controlling persons" of Tandem within the meaning of section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a), and thus liable for any violations of federal securities laws by Tandem while the individual defendants were Tandem employees. The individual defendants contended, and the district court concluded, that Wool failed to allege facts that would state a claim under section 20(a).

We review de novo the district court's dismissal of Wool's section 20(a) claim. *See Guillory*, 731 F.2d at 1381. Review of dismissal for failure to state a claim is limited to the contents of the complaint. *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir.1984). "To dismiss, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Plaine*, 797 F.2d at 723.

We disagree with the district court's conclusion that Wool failed to state a claim under section 20(a). Section 20(a) imposes joint and several liability on persons who directly or indirectly control a violator of the securities laws.[7] To state a claim that the individual defendants were "controlling persons" of Tandem, Wool must allege that: 1) the individual defendants had the *power* to control or influence Tandem, and 2) the individual defendants were *culpable participants* in Tandem's alleged illegal activity. *See Kersh v. General Council of the Assemblies of God*, 804 F.2d 546, 548–49 (9th Cir.1986); *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984).[8] Wool fulfills both requirements.

---

**7.** Section 20(a), 15 U.S.C. § 78t(a), provides: Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person ... is liable, unless the controlling

person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

**8.** In order to prevail on a section 20(a) claim, Wool must also prove that the controlled person (Tandem) violated a rule or regulation under

## A. Nature of the Two-Pronged Test for Establishing Control

At the outset, one problem in applying the two-pronged test for establishing control should be noted. The 1934 Act was intended, inter alia, to protect investors against manipulations of stock prices and to afford remedies for fraud in securities trading. S.Rep. No. 792, 73d Cong., 2d Sess. 1–5 (1934). To achieve these goals of deterrence and relief, section 20(a) imposes liability on persons who were able, directly or indirectly, to exert influence on the policy and decisionmaking process of others: that is, "the [person] who stands behind the scenes and controls the [securities violator] who is in a nominal position of authority." 78 Cong.Rec. 8086, 8095 (1934) (remarks of Rep. Lea).

Because section 20(a) attempted to cut through formal legal insulation and allocate liability for statutory violations in accordance with the realities of business relationships, the issue of control is a complex question of fact requiring a close examination of the particular situation and organization. See Kersh, 804 F.2d at 548–49. In fact, in enacting section 20(a), Congress declined to define the term "control" because "[i]t would be difficult if not impossible to enumerate or to anticipate the many ways in which actual control may be exerted." H.R.Rep. No. 1383, 73d Cong., 2d Sess. 26 (1934).

Because the concept of control, in the context of the securities law, is an elusive notion for which no clear-cut rule or standard can be devised, the two-pronged test for establishing control should be construed liberally and flexibly. Cf. Myzel v. Fields, 386 F.2d 718, 738 (8th Cir.1967) (section 20(a) is "remedial" in purpose and "is to be construed liberally"). cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968). Its focus should be on how to characterize the relationship between the various alleged controlling persons and the alleged violator of the securities laws. In accordance with this fact-specific approach, the narrow question on appeal is whether Wool alleged that the individual defendants, who served as the officers of Tandem, were in some meaningful sense the persons who stood behind the alleged fraud perpetrated by Tandem.

## B. Secondary Liability of Corporate Officers

### 1. Power to Control or Influence

■ In order to state a claim that the individual defendants were controlling persons, Wool must first allege that the individual defendants had the power to control or influence Tandem. See Kersh, 804 F.2d at 548; Burgess, 727 F.2d at 832. Ordinarily, the status or position of an alleged controlling person, by itself, is insufficient to presume or warrant a finding of power to control or influence. See McFarland, 493 F.Supp. at 649. However, where, as here, the corporate officers are a narrowly defined group charged with the day-to-day operations of a public corporation, it is reasonable to presume that these officers had the power to control or influence the particular transactions giving rise to the securities violation.[9] Consequently, it is

---

the 1934 Act causing injury to Wool. See Christoffel v. E.F. Hutton & Co., 588 F.2d 665, 667–68 (9th Cir.1978). In reviewing the district court's dismissal of Wool's allegations of controlling person liability against the individual defendants, we assume that Wool satisfied this element of the section 20(a) cause of action. As mentioned earlier, Wool submitted specific facts upon which a finder of fact could reasonably conclude that Tandem violated the federal securities laws. In a motion to dismiss, such facts must be taken as true and construed in the light most favorable to the nonmoving party (Wool). See Plaine, 797 F.2d at 723.

Consequently, the only question before us is whether the individual defendants were "con-

trolling persons" within the meaning of section 20(a) and thus liable for Tandem's alleged misdeeds.

**9.** Although section 20(a) clearly requires a showing that the alleged controlling persons have the power to control or influence the controlled person, it is silent as to the necessary scope of such power: is the potential for control over all phases of Tandem's business activities necessary, is the potential for control over Tandem's securities issues sufficient, or is the potential for control over Tandem's particular transactions giving rise to the securities violation sufficient?

Section 20(a) is equally silent on the degree of control that the alleged controlling persons

sufficient if Wool informed the individual defendants "who they are alleged to control and what acts or status indicate such control." *Hudson v. Capital Management International, Inc.*, [1982–1983 Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,222, at 95,905 (N.D.Cal.1982).

A review of the relevant allegations of the complaint shows that Wool properly alleged the control relationship between the individual defendants and Tandem. During the relevant period, Treybig, Marshall, and Morgan were the President/Chief Executive Officer, Senior Vice President/Chief Operating Officer, and Vice President/Controller of Tandem, respectively. In their positions of responsibility, the individual defendants had direct involvement not only in the day-to-day affairs of Tandem in general but also in Tandem's financial statements in particular. Accordingly, this element of a claim under section 20(a) is satisfied.

### 2. *Culpable Participation*

In addition to the power to control or influence, this court has indicated that there must be some allegation of actual participation in activities which are claimed to violate the securities laws before the consequences of control may be imposed. *See Kersh*, 804 F.2d at 549; *Burgess*, 727 F.2d at 832; *Christoffel v. E.F. Hutton & Co.*, 588 F.2d 665, 669 (9th Cir.1978). However, as mentioned earlier, in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing. *See Zatkin*, 551 F.Supp. at 42. Moreover, in cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other "group-published information," it is reasonable to presume that these are the collective actions of the corporate officers. *See Bruns*, 583 F.Supp. at 1052; *Zatkin*, 551 F.Supp. at 42. Under such circumstances, a plaintiff alleges culpable participation under section 20(a) by pleading the misrepresentations with particularity and where possible with respect to the individual defendants. *Cf. Bruns*, 583 F.Supp. at 1052; *Zatkin*, 551 F.Supp. at 42.

Wool satisfied this requirement. In the complaint, Wool alleged that the individual defendants "recklessly issued, caused to be issued, participated in the issuance of, or aided and abetted the preparation and issuance of false and misleading statements to the investing public." These allegations are based on the SEC's complaint which alleged that: 1) the individual defendants aided and abetted certain violations of the 1934 Act by causing Tandem to file the misleading quarterly reports; 2) the individual defendants were responsible for the preparation and maintenance of Tandem's books and records; 3) Treybig and Marshall were responsible for the operations of Tandem; and 4) Morgan was responsible for Tandem's accounting department. Wool's allegations sufficiently charged the individual defendants with participation in Tandem's alleged misrepresentations.

### CONCLUSION

The district court's judgment is REVERSED and REMANDED for further proceedings consistent with this opinion.

must possess over the securities violator: for example, is section 20(a) aimed only at high level corporate executives who actually formulate and carryout the securities violations; is section 20(a) aimed also at outside directors, as opposed to inside directors, who are basically inactive in corporate matters but who supervise the activity of the corporate officers; or is section 20(a) aimed also at minority shareholders who only possess limited and indirect power to influence the management and policies of the securities violator?

Although these and other questions regarding the scope and degree of control are important, we need not answer them in the instant case. Assuming, *arguendo*, that section 20(a) should be strictly construed, Wool nevertheless has adequately alleged that the individual defendants had the power to control or influence Tandem.