Stanley RINTEL, et al., Plaintiffs,

v.

Thomas W. WATHEN, et al., Defendants.

Nos. CV 92–3767–AAH,
CV 92–4063–AAH.

United States District Court,
C.D. California.

Nov. 24, 1992.

Milberg, Weiss, Bershad, Specthrie & Lerach, William S. Lerach, Susan S. Gonick, San Diego, Cal., Kevin P. Roddy, Los Angeles, Cal., Law Offices of Lawrence G. Soicher, Lawrence G. Soicher, New York City, for Stanley and Ruth Rintel.

Milberg, Weiss, Bershad, Specthrie & Lerach, William S. Lerach, Alan Schulman, San Diego, Cal., Berger & Montague, P.C., Sherrie R. Savett, Levin, Fishbein, Sedran & Berman, Arnold Levin, Philadelphia, Pa., for Harris Sklar.

Paul, Hastings, Janofsky & Walker, Earl M. Benjamin, Douglas J. Rovens, Mary H. Chu, Los Angeles, Cal., for Pinkerton's Inc.

Smaltz & Anderson, Donald C. Smaltz, Robert Hess, Andrew Rosenfeld, Los Angeles, Cal., for Thomas W. Wathen.

Morrison & Forester, Kenneth M. Glazier, Lauren T. Nyguen, Los Angeles, Cal., for Albert Berger.

## ORDER DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE

### MEMORANDUM DECISION AND ORDER

HAUK, Senior District Judge.

### INTRODUCTION

Plaintiffs have filed this securities class action on behalf of all persons who purchased Pinkerton's common stock between September 25, 1991 and June 18, 1992 (the "Class Period"). On August 4, 1992, this Court consolidated the separate but identical complaints filed by plaintiffs Stanley and Ruth Rintel, CV 92–3767 AAH and Harris Sklar, CV 92–4063 AAH. Plaintiffs have not yet moved for certification of the class. On August 17, 1992, plaintiffs moved this Court to consolidate the *Rintel* and *Sklar* cases, and for entry of a pretrial order appointing Milberg, Weiss, Bershad, Specthrie, & Lerach and Berger & Montague as co-lead counsel. After hearing these motions, this Court ruled that the plaintiff's motion for consolidation was moot, given this Court's August 4th consolidation order, and that plaintiff's motion for appointment as co-lead counsel was premature. This Court also granted plaintiffs leave to file a consolidated first amended complaint. The consolidated first amended complaint (hereinafter "complaint") was filed with the Court on September 18, 1992. Defendant Pinkerton's, Inc. has now brought a motion to have plaintiff's complaint dismissed under Fed.R.Civ.P. 12(b)(6). Defendant Thomas Wathen has also brought a motion to dismiss, as well as alternative motions to strike portions of the complaint or to move for a more definite statement. Defendant Albert Berger has brought the same motions as Thomas Wathen, and in fact, relies upon Wathen's memorandum of points and authorities in support of his own motions.

### FACTS

Plaintiffs Stanley and Ruth Rintel and Harris Sklar claim to have purchased shares of Pinkerton's common stock during the Class Period. Defendant Pinkerton's Inc. is a corporation that provides security and investigative services. Plaintiffs allege that defendants made material false and misleading statements with regard to the implementation of a business strategy that would result in earnings growth of at least 25% in fiscal 1992. Plaintiffs also allege that they purchased shares of Pinkerton's common stock while relying on these false and misleading statements. Finally, plaintiffs claim that they were injured when the alleged fraud was revealed through a press release issued by Pinkerton's on June 18, 1992 stating that corporate earnings would not meet corporate projections, and Pinkerton's stock fell in price by $5.75 a share as a result. Defendant Thomas Wathen is the Chairman of the Board and Chief Executive Officer of Pinkerton's. Defendant Albert Berger served as President and Chief Operating Officer and Vice Chairman of the Board of Directors of Pinkerton's until April 13, 1992.

### DISCUSSION

#### A. Introduction

Plaintiffs' complaint attempts to state two separate causes of action. The first cause of action is against all defendants and alleges violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) and SEC Rule 10b–5 (17 C.F.R. 240.10b–5) promulgated thereunder. (Both Statute and Rule are referred to jointly hereinafter as "Rule 10b–5"). The second cause of action is against the individual defendants only, and alleges violations of Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78t(a)).

Plaintiffs' first cause of action alleges that the defendants violated Section 10(b) and Rule 10(b)(5) by defrauding all purchasers of Pinkerton's common stock during the class period by either making untrue statements of material facts or failing to make statements of material fact necessary under the circumstances to make other statements not misleading. Plaintiffs' second cause of action alleges that the individual defendants violated Section 20(a) by reason of their positions as controlling persons of a corporation which engaged in wrongful conduct.

## B. Standard of Review

The standard of review for a motion to dismiss in this Circuit is as follows: In reviewing a motion to dismiss a court must accept as true all material allegations in the complaint, as well as reasonable inferences that can be drawn therefrom, and must construe those facts and inferences in a light most favorable to the non-moving party. *NL Industries v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). However, the court should grant a motion to dismiss if it appears plaintiffs can prove no set of facts which would entitle plaintiffs to relief. *Sun Savings & Loan Assoc. v. Dierdorff*, 825 F.2d 187, 191 (9th Cir.1987). A complaint may be dismissed as a matter of law for two reasons; (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable theory. *In re Verifone Securities Litigation*, 784 F.Supp. 1471, 1483 (N.D.Cal.1992) (citing 2A J. Moore, *Moore's Federal Practice*, 12.08 at 2271 (2d ed. 1982)).

## C. Ninth Circuit Standards For Particularity of Pleading In Corporate Fraud Actions Under Fed.R.Civ.P. 9(b)

Fed.R.Civ.P. 9(b) requires "all averments of fraud" to be "stated with particularity". However, courts in the Ninth Circuit have relaxed these requirements " 'where, as in cases of corporate fraud, the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing.' " *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987) (citing *Zatkin v. Primuth*, 551 F.Supp. 39, 42 (S.D.Cal.1982)). Based upon this perceived inability of plaintiffs to obtain certain facts in cases of alleged securities fraud, in the Ninth Circuit Rule 9(b) is satisfied by pleading "the time, place and nature of the alleged fraudulent activities." *Zatkin*, 551 F.Supp. at 42. Despite the above, these relaxed requirements do "... not read Rule 9(b) out of existence". *Verifone*, 784 F.Supp. at 1487. Therefore, to state a cause of action under Rule 10(b)(5) in the Ninth Circuit, it is necessary for plaintiffs to plead the time, place and nature of the alleged fraudulent activity such that the defendants can prepare an adequate answer to the allegations. *Wool*, 818 F.2d at 1439.

## D. The First Cause Of Action: Alleged Violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) and Rule 10b–5 (17 C.F.R. 240.-10b–5)

1. Statements Actionable Under Rule 10b–5 As Interpreted By the Ninth Circuit's Decision In *In re Convergent Technologies Securities Litigation*

The Ninth Circuit recently addressed the question of what types of statements are actionable under Rule 10b–5 in the case of *In re Convergent Securities Litigation*, 948 F.2d 507 (9th Cir.1991). The *Convergent* Court concluded that neither the disclosure of accurate historical data accompanied by general statements of optimism nor the failure to disclose internal forecasts of future performance are actionable. These standards were used by the Court in *In re Verifone Securities Litigation*, 784 F.Supp. at 1483, in granting a motion to dismiss. It should be noted that the situation in *Verifone* was very similar to the one now before this Court. The *Verifone* decision involved a motion to dismiss a first amended complaint alleging violations of Rule 10b–5. In *Verifone*, as in this case, plaintiffs' case was composed entirely of press releases and other public statements made by the defendants. It should also be noted that the primary counsel for the plaintiffs in the instant litigation also served as counsel for the plaintiffs in the

*Convergent* and *Verifone* decisions. This Court finds Judge Walker's decision in the *Verifone* case to be both well reasoned and persuasive, and where applicable, that is to say *mutatis mutandis,* this Court will use that decision as a model mirror image, a paradigm to follow.

■ Therefore, under the *Convergent* and *Verifone* decisions, plaintiffs must allege facts other than the disclosure of accurate historical data along with general statements of optimism or the failure to disclose internal forecasts of future performance, in order to state a cause of action. Plaintiffs in the instant action have failed to meet this standard.

2. The Allegedly Actionable Statements

A review of the lengthy first amended complaint reveals that plaintiffs are relying solely on *sixteen* statements made by the defendants, in the form of press releases and filings with the SEC, in order to state a cause of action. As the following short review demonstrates, all of these statements, taken individually or in the aggregate, can truly be characterized as historical facts combined with general statements of optimism. It should also be noted that a number of the statements that plaintiffs claim are actionable due to their being overly optimistic actually contain words of caution and warning as to Pinkerton's financial outlook.

The *first* of the so called actionable statements is a September 25, 1991 press release announcing Pinkerton's third quarter results. (Plaintiffs' complaint at paragraph 46). The press release contains comments by defendant Berger that he would "expect improved margins" and also "progressive growth" in the future. Clearly, this press release is an example of non-actionable historical fact along with statements of general optimism.

The *second* statement relied upon by plaintiffs is a form 10–Q filed with the SEC on October 21, 1991. (Plaintiffs' complaint at paragraph 47). Plaintiffs only claim with respect to this document is that "it fails to disclose any risks." However, since the non-disclosure of internal forecasts is not actionable, this second statement is not helpful to plaintiffs.

The *third* statement is a Third Quarter Report to Shareholders issued on October 31, 1991. (Plaintiffs' complaint at paragraph 48). This document reported increased revenues and net incomes during the third quarter. The report also contained both positive and negative statements about Pinkerton's future. While the report does state that the company believed that there were a number of factors that would provide short term growth, the report also warns that a faster increase in wage rates than billing rates was resulting in reduced operating margins. Clearly, this report contains no statements which are actionable.

The *fourth* and *fifth* statements are similarly devoid of anything actionable under Rule 10b–5. (Plaintiffs' complaint at paragraphs 49 and 50). The fourth statement is a press release issued on October 22, 1991 announcing Pinkerton's acquisition of Argus Shield, a British security firm. The fifth statement is a Business Brief from the Wall Street Journal which reports that Pinkerton's expected that the Argus Shield acquisition would be a positive one due to the similarity between the U.S. and British security industries. Again, these types of statements are not actionable under the *Convergent* standards.

The *sixth* statement relied upon by plaintiffs is a November 5, 1991 press release issued to announce Pinkerton's acquisition of BRI, a securities consulting firm. (Plaintiffs' complaint at paragraph 51). Since the content of this press release is a matter of historical fact, this statement is not actionable.

The *seventh* statement is a December 2, 1991 press release reviewing Pinkerton's recent acquisitions. (Plaintiffs' complaint at paragraph 52.) The press release contains statements by defendant Berger as to why he believed these acquisitions were positive moves for the company as well as his opinion that they would contribute to earnings. Again, this is an example of non-actionable historical data combined with general statements of optimism.

The *eighth* statement is a January 30, 1992 press release announcing Pinkerton's fourth quarter and fiscal year results. (Plaintiffs' complaint at paragraph 53). The contents of the press release again consist of historical data along with general comments by defendant Berger. The press release also contains another warning with respect to wage rates increasing faster than billing rates.

The *tenth* through *fourteenth* statements, (Plaintiffs' complaint at paragraphs 55 to 59), consist of two form 10–Q's filed with the SEC, a letter to shareholders from Pinkerton's annual report and two press releases. The content of these documents is the same as those detailed above. These documents contain historical facts along with generally optimistic statements such as Pinkerton's "is well-positioned to grow in the future." (Plaintiffs' complaint at paragraph 56). These documents also contain negative references to "limited tightening of margins". (Plaintiffs' complaint at paragraph 56). Overall, an examination of these documents reveals nothing that is actionable under Rule 10b–5.

The *ninth* and *fifteenth* statements are the closest the plaintiffs have come to pleading anything actionable under Rule 10b–5. The *ninth* statement was made by defendant Berger on March 16, 1992 and repeated in a press release. (Plaintiffs' complaint at paragraph 54). On that date Berger stated "[w]e expect earnings to increase at least 25% during 1992 based on the following factors ..." Berger then listed a number of factors to support his prediction. Berger also cautioned in the same statement "... that higher than expected expenses and seasonally lower than expected revenues associated with the acquisition late in 1991 of Business Risks International may cause first quarter 1992 net income to be lower than the same period last year."

The *fifteenth* statement is one allegedly made by defendants on May 22, 1992. On that date plaintiffs' complaint alleges that a representative of Pinkerton's told a group of analysts at L.H. Friend, Weinress & Frankson that the previously predicted 25% earnings increase was "a stretch but still achievable." (Plaintiffs' complaint at paragraph 60).

Plaintiffs allege that the above statements were shown to be fraudulent under Rule 10b–5 in light of information contained in the *sixteenth* statement, a press release issued by Pinkerton's on June 18, 1992. That press release stated that "second quarter results will be significantly below corporate targets." (Plaintiffs' complaint at paragraph 61). The press release stated that this downward projection of corporate earnings was based on a softening of demand for security services. *Id.* Defendant Wathen explained that "although the total number of Pinkerton clients and revenues are still increasing, the average level of [security] service held by major U.S. and Canadian clients has declined, presumably due to recession-related cost cutting." *Id.*

On the basis of these sixteen statements, plaintiffs seek to initiate a major class action securities fraud case. It is clear to the Court that under the applicable standards no cause of action could arise from these meager and minimal allegations. *See Convergent,* 948 F.2d at 515 (Optimistic prediction of revenues which proved to be wrong by 10% is not actionable). Therefore, plaintiffs' first cause of action must be dismissed as to all defendants.

E. Count Two: "Controlling Person" Liability Under Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78t(a))

Count Two of plaintiffs' complaint seeks to state a cause of action under Section 20(a) of the Exchange Act against the individual defendants. This Section states "[e]very person who directly or indirectly, controls any person liable under any provision of" the Act is jointly and severally liable with the controlled person, "unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause the action". 15 U.S.C. 78t(a). Given that this second cause of action is dependent upon the first, since the only viola-

tions of the Exchange Act for which the individual defendants could be jointly and severally liable are those detailed in Count One, this second cause of action must also be dismissed as to all defendants.

### F. Plaintiffs' Complaint And The Two Alleged Causes Of Action Should Be Dismissed With Prejudice

■ In considering whether to dismiss plaintiffs' complaint with prejudice, this Court will follow Judge Walker's decision in *Verifone*. The situation facing Judge Walker in *Verifone* was similar to that now before this Court, i.e. a motion to dismiss had been brought challenging the sufficiency of an amended complaint alleging violations of Rule 10b–5. In determining that plaintiff's complaint would be dismissed with prejudice, Judge Walker wrote:

> When a complaint is dismissed for failure to state a claim upon which relief can be granted, district courts have discretion to deny plaintiffs leave to amend if amendment of the complaint would be futile. "If the court determines that the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' then a dismissal without leave to amend is proper." *Albrecht v. Lund,* 845 F.2d 193, 195 (9th Cir.1988)

> The initial burden of an amorphous and diffuse securities class action complaint is placed on the defendants. This burden ultimately comes to rest on shareholders who, directly or indirectly, pay for the compliance with and private enforcement of the securities laws. To the extent that private securities litigation discourages misconduct, shareholders receive something in return. But a complaint unable even to identify the fraudulent conduct it supposedly targets serves no useful purpose. The costs imposed by such a pleading, while not precisely measurable, become a deadweight loss for society.

> Here, the complaint itself reflects the best efforts of at least ten distinguished law firms that specialize in this area and could not be improved. It incorporates allegations of the actions filed on September 20 and 21, 1990. Because no fee shifting is available to internalize the social costs of this litigation, the court determines that it would be unwise and an unfair burden on shareholders to give these law firms more than two bites at an apple they have not been able to get their teeth into. Accordingly, the motion to dismiss the federal securities law claims based on the prospectus and other reports and press releases issued by Verifone is GRANTED WITH PREJUDICE.

Likewise, this Court now has before it a first amended complaint alleging two causes of action under the federal securities laws. This consolidated amended complaint adds nothing of substance to what was alleged in the two original complaints. In fact, in setting forth the alleged actionable and fraudulent statements of the defendants, the language used in the amended complaint is *in haec verba* identical to the language used in the original complaints. Nothing new has been added. However, several new conclusions derived by the plaintiffs from the alleged statements of the defendants have been included.

Similar to the consolidated amended complaint before Judge Walker in *Verifone,* the consolidated amended complaint before this Court is an attempt by the law firms to convince the Court that allegations different from those in the original complaint have been set forth. But close scrutiny of the allegations fails to discover any significant change in substance or even in language. This Court agrees with Judge Walker's contention that allowing a case of this nature to go forward when the plaintiffs have been unable to identify the fraudulent activity they target is a deadweight loss both to the corporation's shareholders and to society. Since the Court can find no assurance that a second amended complaint could identify the fraudulent activity targeted, plaintiffs' amended complaint should be dismissed with prejudice.

### ORDER

Based upon the foregoing, IT IS ORDERED:

1. That defendant Thomas W. Wathen's Motion to Dismiss is GRANTED WITH PREJUDICE.

2. That defendant Albert J. Berger's Motion to Dismiss is GRANTED WITH PREJUDICE.

3. That defendant Pinkerton's Inc.'s Motion to Dismiss is GRANTED WITH PREJUDICE.