SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

Drew S. LEVIN, Noel Cronin, and Michael MacChiarella, Defendants.

No. CV 05–02547 DDP (SHX).

United States District Court, C.D. California.

Aug. 15, 2005.

Dean M. Conway, Washington, DC, Jose F. Sanchez, Michael A. Piazza, Los Angeles, CA, for Plaintiff.

Andrew Baum, Mark G. Krum, Peter C. Sheridan, Christensen Miller Fink Jacobs Glaser Weil & Shapiro, Los Angeles, CA, for Defendants.

**ORDER DENYING DEFENDANT DREW S. LEVIN'S MOTION TO DISMISS COMPLAINT AND MOTION TO STRIKE PORTIONS OF COMPLAINT**

PREGERSON, District Judge.

This matter comes before the Court on the motion by defendant Drew S. Levin to dismiss the complaint, and his motion to strike portions of the complaint. After reviewing the papers submitted by the parties, and considering the arguments contained therein, the Court is denies the motions.

## I. Background

In this action, the federal Securities and Exchange Commission (the "SEC") seeks civil penalties, disgorgement, and injunctive relief against Drew S. Levin for alleged violations of the Securities and Exchange Act of 1934, including securities fraud. Levin was the CEO and Chairman of the Board of Directors of Team Communications Group, Inc. ("Team") from approximately 1997 until he retired on February 12, 2001. (Compl.¶ 12.) Team, a publicly-held company registered with the SBC, produced and distributed movies and television shows in the United States and abroad. (*Id.*¶ 15.) Among its activities, Team purchased libraries of old movie and television titles, which it then licensed for distribution. (*Id.*¶ 19.)

The SEC alleges that in 1999 and 2000 Levin directed a series of fraudulent purchase and sale transactions of Team's film libraries with related or friendly third parties, thereby falsely inflating the company's revenue and income. (*Id.*¶ 19–20.) The alleged fraudulent transactions followed one of two patterns.

First, the SEC alleges that Levin designed and directed "circular payment" transactions. (*Id.*) Under this alleged scheme, Levin (or others at his direction) would negotiate the purchase of a film library and then enter into sham sales contracts to sell film rights to friendly parties. (*Id.*) The payments under the sales contracts were offset by Team's execution of additional sham purchase contracts with the same parties. (*Id.*) These parties would agree to use the money received from Team under the fake purchase contracts to pay Team under the fake sales contracts. (*Id.*) In its complaint, the SEC presents detailed allegations relating to at least five interrelated circular payment transactions: the Prestige Library–Renown Transactions; the Prestige Library–String of

Pearls Transactions; the Prestige Library–Anastasia Transaction; the Marquee Library–Anastasia Transaction; and the Marquee Library–Visual 80 Transaction. (*Id.*¶¶ 21–40.)

Second, the SEC alleges that Levin utilized "non-binding minimum-guarantee sales" contracts. Under this alleged scheme, Levin directed the licensing of rights to various film libraries it owned to third parties. (*Id.*¶ 41.) Thus, a third-party distributor would guarantee a certain minimum payment in exchange for the licensing agreement. (*Id.*) However, Team also executed side-letter agreements that gave the third-party distributor the unilateral right to cancel the contract. (*Id.*) The SEC alleges that no payments were ever made to Team, but that Team nevertheless reported revenues for the second and third quarters of 2000 that included the amounts guaranteed in these contracts. (*Id.*¶¶ 41–42.) The SEC lists twelve non-binding minimum guarantee sales contracts, and describes in detail how one such contract operated. (*Id.*¶¶ 42, 45–48.)

The SEC also alleges that Levin was unjustly enriched by the alleged frauds, and it seeks, as part of the relief requested, disgorgement of his compensation during the time the frauds occurred, and recovery of a loan Levin obtained using Team stock as collateral. (*Id.*¶¶ 49–50.)

The Court is familiar with the following facts relating to Team's fate from the related class action lawsuit, *In re Team Communications Group, Inc., Securities Litigation*, CV 01–02312 DDP (SHx), also before this Court. In February and March of 2001, following the actions alleged in the instant complaint, Team issued disclosures revealing that its prior earnings reports were overstated. The company's stock value fell as a result of these disclosures. Shortly thereafter, purchasers of Team securities brought eight separate actions against Team, all of which were consolidated before this Court in the aforementioned class action. Team executed a settlement agreement with the class in March 2002. Team subsequently filed for bankruptcy protection on April 16, 2002.

## II. Discussion

### A. Defendant's Motion to Dismiss

Levin now moves the Court to dismiss the SEC's complaint. First, he submits that the complaint does not state its claim for securities fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. He further submits that the remaining claims are dependent on the securities fraud claim, and therefore also fail.

#### 1. Legal Standard

Dismissal under Rule 12(b)(6) is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Newman v. Universal Pictures*, 813 F.2d 1519, 1521–22 (9th Cir.1987) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Accordingly, the Court must "accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Arpin v. Santa Clara Valley Transp., Agency*, 261 F.3d 912, 923 (9th Cir. 2001) (citation omitted). Nonetheless, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss ..." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.2004).

#### 2. Fed.R.Civ.P., Rule 9(b)'s Heightened Pleading Standard

Claims brought under Rule 10b–5 of the Securities and Exchange Act of 1934 must meet the particularity requirements of Fed.R.Civ.P., R. 9(b). *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987). Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

The Ninth Circuit has explained that, in securities fraud actions, the plaintiff "must aver with particularity the circumstances constituting the fraud." *In re Glen-Fed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir.1994) (en banc). Thus, a pleading is sufficient if it identifies the circumstances of the

alleged fraud so that the defendant can prepare an adequate answer. *Fecht v. Price Co.,* 70 F.3d 1078, 1082 (1995). The notice requirement means that the pleading should contain allegations of the "time, place and nature of the alleged fraudulent activities." *Id.* (*quoting Walling v. Beverly Enterprises,* 476 F.2d 393, 397 (9th Cir.1973)). In addition, "the plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *In re GlenFed,* 42 F.3d at 1548. Further, the statement or omission must be alleged to have been false or misleading when made. *Id.* at 1548–49. However in accordance with the final sentence of Rule 9(b), the complaint need only state that the required scienter existed.[1] *Id.* at 1547.

### 3. *Plaintiff's Claims Are Adequately Pled*

The complaint alleges that Levin violated section 10 of the Securities and Exchange Act of 1934, codified at 15 U.S.C. § 78j(b). That statute provides, in pertinent part, that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm–Leach–Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

The SEC also submits that Levin's conduct violated Rule 10b–5, which provides that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

In its complaint, the SEC alleges that Levin employed the detailed schemes in order to create the appearance that Team's income, revenue, and assets, were higher than they actually were. Team then reported these increased figures to the SEC and disclosed them to the public, thereby creating interest in the company, and inflating the value of its securities.

Levin submits in his motion that the SEC has failed to plead with sufficient particularity because its complaint does not allege that he engaged in, or omitted from engaging in, any particular acts giving rise to the fraud. He notes that the complaint only states that he "directed" or "caused" others to commit the specific acts leading to the fraud. Also, Levin submits that the SEC does not specify which reports were false or misleading or explain why or how they were false or misleading.

A review of the complaint leads the Court to find that Levin's arguments are mistaken. The allegations contained in the SEC's complaint describe in detail how the different

---

**1.** In 1995, Congress passed the Private Securities Litigation Reform Act ("PSLRA"), which imposed additional pleading requirements on private plaintiffs, including a more rigorous scienter requirement. 15 U.S.C. § 78u–4(b)(2). It is well settled, and it is undisputed here, that the PSLRA's super-heightened pleading requirements, "which go beyond the Rule 9(b) requirements," *SEC v. ICN Pharmaceuticals. Inc.,* 84 F.Supp.2d 1097, 1099 (C.D.Cal.2000), do not apply to actions brought by the SEC, such as this one.

schemes were carried out. For instance, with respect to one circular payment transaction, the "Prestige Library–Renown" transaction, the SEC details that

On or about June 25, 1999, Levin directed the $2.2 million purchase of a library of older film titles, referred to as the "Prestige Library," by Team. Soon thereafter, on or about June 28, 1999, Levin caused Team to enter into another contract in which Team sold certain rights to the Prestige Library to Renown, the Cronin-controlled company, for $3.3 million (the "Prestige Library Contract"). This was a sham transaction.

Compl. ¶ 21.

The complaint continues to describe in detail how Levin and Cronin allegedly arranged to fund Renown's payments to Team by executing a second contract between Team and DD Video, another film distribution company of which Cronin was the director. (*Id.* ¶¶ 22–23.) The SEC alleges that Cronin, at Levin's direction, forged a signature on behalf of DD Video executing a fabricated sale of another film library, the "Victory Library," and intercepted the payment from Team to DD Video so that he could pay Team the money owing from the Renown deal for the Prestige Library Contract. (*Id.* ¶¶ 22–24.)

The complaint contains descriptions of other fraudulent transactions with equally specific details. The SEC also alleges that Levin devised these schemes in order to falsely increase Team's revenue and income, and that Team filed reports with the SEC relating to the company's fiscal years 1999 and 2000 that contained material misstatements and omissions, notably that they misstated Team's revenue, income, and assets for the four periods ending December 31, 1999 and September 30, 2000. (*Id.* ¶¶ 3, 6, 9, 12, 20, 22, 25, 27, 28, 29, 31, 32, 36, 37, 38, 42, 46.)

■ Nevertheless, Levin argues that the complaint lacks sufficient particularity. However, despite the heightened pleading standard attendant to claims of fraud, the SEC is not required to plead detailed evidence concerning each and every fraudulent act alleged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997) ("It is not fatal to the complaint that it does not describe in detail a single specific transaction … by customer, amount, and precise method."). Indeed, the SEC has described at least five different fraudulent transactions in great detail, including when they are alleged to have occurred, how they were carried out, and who was involved.

■ Levin also contends that copies of disclosure documents submitted with his motion belie the SEC's allegations that the subject transactions were fraudulent. However, these documents, which the SEC asserts contain false statements, do not negate the SEC's claims as a matter of law, but rather are evidence that Levin may rely on at summary judgment or trial. Indeed, the presentation of this evidence demonstrates that the SEC's complaint is pled adequately enough to enable Levin to answer the allegations contained therein.

Accordingly, the Court finds that the complaint "identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer." *Kaplan v. Rose*, 49 F.3d 1363, 1375 (9th Cir.1994). It complies with the strictures of Rule 9(b), and dismissal under either that rule or Rule 12(b)(6) is not warranted. Because Levin predicated dismissal of the SEC's other claims on the dismissal of the securities fraud claim, these requests fail as well. The Court denies the defendant's motion to dismiss.

### B. *Defendant's Motion to Strike*

Next, Levin moves the Court to strike various passages contained in the complaint. Specifically, he moves to strike various allegations that he claims lack factual support, and passages dealing with the SEC's claim for disgorgement.

### 1. *Legal Standard*

■ Prior to serving a response, a party may move to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f) ("Rule 12(f)"). To be immaterial or impertinent, the challenged material must have "no possible bearing on the controversy." *Employers Ins. v. Musick, Peeler & Garrett*, 871

F.Supp. 381, 391 (S.D.Cal.1994). "Motions to strike are generally disfavored because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of California*, 290 F.Supp.2d 1101, 1152 (C.D.Cal.2003). Accordingly, courts often require "a showing of prejudice by the moving party" before granting the requested relief. *Sec. and Exch. Comm'n v. Sands*, 902 F.Supp. 1149, 1166 (C.D.Cal.1995) (citations omitted). In considering a motion to strike, the court views the pleadings in the light most favorable to the non-moving party, *see In re 2TheMart.com Securities Litigation*, 114 F.Supp.2d 955, 965 (C.D.Cal.2000), and resolves any doubt as to the relevance of the challenged allegations in favor of plaintiff.

### 2. *Striking is not Warranted*

After reviewing the passages identified by Levin, the Court finds that Levin has not made a sufficient showing to warrant striking any of them. He has not shown how any of the passages are redundant, immaterial, impertinent, or scandalous; nor has he made a showing that any of them unfairly prejudice him in any way.

The majority of the passages—the ones not dealing with disgorgement—are merely the type of factual allegations typically contained in a complaint. It appears that Levin is arguing that the non-disgorgement passages in question are improperly stated because they lack sufficient factual development. Thus, where the complaint alleges that Levin was the "architect" of the fraudulent scheme, compl. ¶ 6, Levin contends that this allegation is conclusory and lacks essential factual support. (Mot. at 17–18.) However, such detail is not required by the Federal Rules; there is no requirement that a complaint *prove* the allegations it contains.

With respect to the SEC's claim for disgorgement, the Court finds that it would be premature to determine whether the specific forms of disgorgement sought by the SEC are prohibited as a matter of law. It is difficult for Levin to show prejudice here because any improper material may be removed at the time of pretrial conference or excluded from evidence at trial, and a determination at that time, after the case has been factually and legally developed, would be more appropriate. *See Butler v. Pollard*, 482 F.Supp. 847, 852 (D.Okl.1979).

## III. Conclusion

Based on the foregoing, the Court denies the defendant's motions in their entirety.

IT IS SO ORDERED.