**John and Christine POWELL and Parker G. Rouse, III, Plaintiffs,**

v.

**H.E.F. PARTNERSHIP, Hawk Mountain Corp., Federal Deposit Insurance Corporation, and Carroll, Sussman & Obuchowski, Defendants.**

**No. 2:91–CV–60.**

United States District Court, D. Vermont.

Sept. 30, 1993.

Michael L. Burak, Brian J. Sullivan, Thomas R. Melloni, Burak & Anderson, Burlington, VT, for plaintiffs John Powell and Christine Powell.

G. Parke Rouse, III, pro se.

John J. Collins, Sutherland & Collins, Burlington, VT, for defendant H.E.F. Partnership.

Andre D. Bouffard, Downs, Rachlin & Martin, Burlington, VT, for defendant F.D.I.C.

Douglas C. Pierson, Pierson, Wadhams, Quinn & Yates, Burlington, VT, for defendant Carroll, Sussman & Obuchowski.

## OPINION AND ORDER

PARKER, Chief Judge.

The Report and Recommendation of the Magistrate Judge was filed March 16, 1993. The Magistrate Judge recommended that the defendant Carroll, Sussman & Obuchowski's motion for summary judgment and to dismiss the complaint (Papers 54 & 73) be granted and that the plaintiffs John and Christine Powell's motion to amend their complaint be denied. These recommendations rendered plaintiffs' motion to compel discovery against Carroll, Sussman & Obuchowski moot. The plaintiffs filed timely objections to the Report and Recommendation on April 30, 1993.

█ A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1); *Perez–Rubio v. Wyckoff,* 718 F.Supp. 217, 227 (S.D.N.Y. 1989). The district judge may "accept, reject, or modify, in whole or in part, the magistrate's proposed findings and recommendations." *Perez–Rubio,* 718 F.Supp. at 227.

## DISCUSSION

The facts of this case have been adequately recited in the Report and Recommendation ("R & R") and do not bear repetition here. It will suffice to relate that the plaintiffs were investors in a failed hotel/condominium project ("the Project"). They have alleged a number of securities violations under federal and state law against the developers, H.E.F. Partnership ("H.E.F."), the bank that provided financing for the Project, Dartmouth Bank[1], and the law firm of Carroll, Sussman & Obuchowski ("CS & O"), which drafted the Offering Memorandum and Amended Offering for H.E.F..

The plaintiffs object to the dismissal of their complaint as to CS & O on the following grounds:

1. The Magistrate Judge's determination that CS & O was not H.E.F.'s agent under Vt.Stat.Ann. tit. 9, § 4225 (1984) was erroneous;

2. The Magistrate Judge's conclusion that the plaintiffs failed to state a federal securities claim was erroneous;

3. The Magistrate Judge's decision to deny the plaintiffs' motion to amend their complaint was erroneous.

Each of these contentions will be addressed in turn. Because this Court rejects portions of the recommendations of the Magistrate Judge, it will also discuss plaintiffs' motion to compel, which, consistent with the following analysis, is no longer moot.

## I. SECTION 4225 and CS & O

█ Count IX of the Amended Complaint alleges that CS & O violated the Vermont Securities Act as an agent of H.E.F.. This Court previously ruled that Vermont statutory law, Vt.Stat.Ann. tit. 9, § 4225 (1984), supplies the rule of decision in the present case.[2] *Powell v. H.E.F. Partnership,* 793 F.Supp. 91, 95 (D.Vt., 1992). Section 4225 provides, in pertinent part:

> Every sale or contract for sale made in violation of the provisions of this chapter shall be voidable at the election of the purchaser and the person making such sale or contract for sale and every director, officer, or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser in an action at law. . . .

Therefore, a cause of action under § 4225 exists against not only the sellers of securities who violate the Vermont Securities Act, Vt.Stat.Ann. tit. 9, §§ 4201–4241 (1984), but also those who participate or aid the seller *in any way* if they are a director, officer or agent. *Id.,* § 4225.

█ The Magistrate Judge stated that "to be liable under § 4225, Plaintiffs must show, at a minimum, that CS & O had the authority to and did in fact, act on the behalf [of] H.E.F. in the sale of securities" and conclud-

---

1. The FDIC, as Liquidating Agent of Dartmouth Banking Co., was substituted as a Party-defendant. (Paper 67)

2. Section 4225 was repealed in 1989 but was in effect when the events alleged in this case occurred.

ed that the amended complaint "alleges no facts to support such a conclusion." R & R, p. 17. Plaintiffs disagree with this standard and the Magistrate Judge's conclusion. They argue that CS & O was an agent of H.E.F. and, by drafting the Offering Memorandum and Amended Offering, participated and aided H.E.F. in the sale of securities.

For purposes of the Vermont Securities Act "agent" is defined as "salesman," in addition to its ordinary meaning. Vt.Stat.Ann. tit. 9, § 4202(1) (1984) (emphasis added).[3] Plaintiffs are correct in asserting that an attorney acting on behalf of a client does so as the client's agent. *Neet v. Silver Street Partnership,* 148 Vt. 99, 102, 528 A.2d 1117 (1987). With this in mind it is clear that CS & O was an agent for H.E.F., within the ordinary meaning of that term, when it prepared the Offering Memorandum and the later Amended Offering.

The Court also finds that by doing so, CS & O aided H.E.F. in the sale of securities as defined in the Securities Act. The definition section of the Securities Act provides that "Sale" or "sell":

> shall include every disposition or attempt to dispose of a security or interest in a security for value. Any security given or delivered with, or on account of, any purchase of securities or any other thing, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been sold for value. "Sale" or "sell" shall also include an exchange, an attempt to sell, an option of sale, a solicitation of a sale, a subscription or *an offer to sell directly or by an agent,* a circular, letter, advertisement, or otherwise.

Vt.Stat.Ann. tit. 9, § 4202(7) (1984) (emphasis added).

CS & O does not dispute that it prepared both the initial Offering Memorandum in 1988 and the Amended Offering in 1989. Those documents were integrally related to the offer to sell securities that H.E.F. made to plaintiffs and others. While it does not appear that CS & O actively "peddled" the securities or met individually with any potential purchasers of securities, by drafting the offering documents it aided H.E.F.'s efforts to sell the securities. Because § 4225 provides a cause of action against "every ... agent ... who shall have participated or aided in any way in making such sale ...," plaintiffs have stated a cause of action under § 4225 against CS & O. Therefore, that part of the Magistrate Judge's Report recommending dismissal of this claim is rejected.

## II. THE FEDERAL SECURITIES CLAIM

In Count III, the plaintiffs alleged that CS & O aided and abetted the alleged federal securities violations committed by H.E.F.. The basis for plaintiffs' federal securities claims is section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). The specific claim against CS & O alleges that the law firm aided and abetted H.E.F.'s violation of section 10(b) by drafting the Amended Offer in 1989 and omitting material facts.

The Magistrate Judge correctly set forth the standard for liability that a plaintiff must satisfy for such a claim:

> (1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party;
>
> (2) "knowledge" of this violation on the part of the aider and abettor; and
>
> (3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.

*IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980). The Magistrate Judge also correctly set forth the standard for reviewing a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Accordingly, these portions of the Magistrate Judge's Report and Recommendation are adopted.

The Magistrate Judge found that the plaintiffs' claim failed to sufficiently allege scienter, the second prong of the aiding and abetting standard. For this reason the Report and Recommendation found that the federal securities claim should be dismissed.

---

3. Salesman is defined to include "every person, other than a dealer, employed or appointed or authorized by a dealer or issuer to sell securities in any manner in this state." § 4202(8).

Plaintiffs object on a number of grounds. They claim that the Magistrate Judge applied a more stringent standard than called for when reviewing claims of federal securities violation on a motion to dismiss for failure to state a claim; that material omissions in offering documents may be grounds for imposing liability upon attorneys if it is reasonably foreseeable that investors will rely upon the documents; and that the distinction the Magistrate Judge made between material omissions and affirmative misrepresentations is inconsistent.

The Court agrees with the Magistrate Judge that no issue is presented on the primary liability component of the aiding and abetting claim. Thus the sufficiency of the complaint must be analyzed with respect to the other two prongs of the standard for aiding and abetting liability set out in *IIT*: "knowledge", or scienter, and "substantial assistance."

## A. *Scienter*

The Magistrate Judge's Report and Recommendation addressed the second prong of the test and found that because CS & O was under no duty to disclose the alleged material facts, the scienter requirement could only be met if plaintiffs asserted facts which would "give rise to an inference that CS & O intentionally aided in the perpetration of securities fraud." R & R, p. 15; *see Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983). This degree of proof of scienter is also referred to as the "conscious intent" standard. *IIT*, 619 F.2d at 925 (quoting *Woodward v. Metrobank of Dallas*, 522 F.2d 84, 97 (5th Cir.1975)). Finding the Complaint insufficient in this regard, the Magistrate Judge recommended that the claim for aiding and abetting securities fraud be dismissed.

Plaintiffs contend that the Magistrate Judge applied the wrong standard to determine the sufficiency of the scienter allegation. They argue that factual allegations of recklessness are sufficient for purposes of meeting the scienter requirement. Because this Court finds plaintiffs' allegation of actual knowledge sufficient to meet the scienter requirement regardless of the applicable standard, this issue need not be addressed.[4]

Plaintiffs have alleged actual knowledge of material omissions in the amended offering memorandum and further alleged specific facts in support of the allegation. (*See, e.g.,* First Amended Complaint, ¶¶ 30, 37, 38). This allegation of actual knowledge is sufficient to satisfy the scienter requirement regardless of the appropriate standard.

Although CS & O relies heavily on portions of the opinion in *IIT v. Cornfeld*, 619 F.2d 909, *IIT* itself demonstrates the sufficiency of pleading actual knowledge. In *IIT*, the court reviewed the sufficiency of an aiding and abetting complaint with respect to three defendants: two underwriters and Arthur Anderson & Co. In its discussion of the scienter requirement, the court determined that the following scienter allegation was sufficient:

> The Underwriter Defendants aided and abetted and joined in the conspiracy by circulating a prospectus which they knew, or should have known, contained material misrepresentations of fact and material omissions.

*IIT*, 619 F.2d at 923. After finding the complaint sufficient under Fed.R.Civ.P. 9(b) because other portions of the complaint alleged the specific misrepresentations and omissions, the court addressed scienter:

---

4. Although determination of the appropriate standard for proof of scienter is unnecessary in this case, the Court is inclined to agree with the reasoning of courts within the circuit that have applied the recklessness standard absent a fiduciary duty in cases where lawyers or accountants can reasonably foresee that third parties will rely on documents they prepare. *S.E.C. v. Electronics Warehouse*, 689 F.Supp. 53, 60 (D.Conn. 1988), *aff'd sub nom., S.E.C. v. Calvo*, 891 F.2d 457 (2d Cir.1989), *cert. denied* 496 U.S. 942, 110 S.Ct. 3228, 110 L.Ed.2d 674 (1990); *Stevens v. Equidyne Extractive Industries 1980*, 694 F.Supp. 1057, 1066 (S.D.N.Y.1988); *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*, 660 F.Supp. 1362, 1367 (D.Conn.1987); *Morgan v. Prudential Group, Inc.*, 527 F.Supp. 957, 961 (S.D.N.Y.1981), *aff'd without op.*, 729 F.2d 1443 (2d Cir.1983); *Investors Funding Corp. of N.Y.*, 523 F.Supp. 550, 558 (S.D.N.Y.1980); *Oleck v. Fischer*, 73 Civ. 1460 (S.D.N.Y.1979) [available on WESTLAW 1979 WL 1217], *aff'd on other grounds* 623 F.2d 791 (2d Cir.1980).

The "or should have known" clause ... would not qualify under the definition of recklessness contained in the cases cited [citations omitted]. However, [the complaint] alleges in the disjunctive that the underwriter defendants "knew" of the misrepresentations and omissions alleged.... As a matter of pleading, more is not required....

*Id.* at 924. In contrast, the complaint was found insufficient with respect to defendant Arthur Andersen & Co. in part because "[t]here [was] no specific allegation of knowledge or recklessness concerning the failure to disclose in the section of the complaint labelled 'Role of Arthur Andersen'...." *Id.*[5]

CS & O's reliance on *IIT*'s discussion of the scienter requirement with respect to Andersen is thus misplaced. Because there was no specific allegation of knowledge, Ander-

sen's position in *IIT* is distinguishable from CS & O's position here. The scienter allegation made against CS & O is more similar to the allegations against the underwriting defendants in *IIT*. Plaintiffs' allegations of actual knowledge satisfy the scienter requirement.

### B. *Substantial Assistance*

The inquiry must now move to the sufficiency of the substantial assistance prong of the aiding and abetting claim. Plaintiffs have alleged that CS & O's preparation of the amended offering memorandum substantially assisted the primary fraud. CS & O argues that liability cannot attach because the work performed for H.E.F. was merely drafting of "grist of the mill" documents that make up the daily work of law firms.[6] *See Woodward v. Metrobank of Dallas*, 522 F.2d

---

[5]. This statement is in direct contravention of CS & O's assertion, contained in its memorandum of law, that the complaint in IIT "alleged that the information provided for the prospectus was false and that Arthur Andersen & Co. knew and failed to correct it" (emphasis added). It was the fact that Andersen was not alleged to have had knowledge that was the crucial distinction between the claim against Andersen, which failed, and the claim against the two underwriters, which survived the 12(b)(6) motion. Because the plaintiff in *IIT* had pled actual knowledge on the part of the underwriters, the distinction was clear. "Since by contrast the sections of the complaint [dealing with the underwriters] both contain the 'knew or should have known' charge, the omission as to Andersen could hardly have been inadvertent." *IIT*, 619 F.2d at 924.

[6]. The cases cited by CS & O to support this proposition are distinguishable for a variety of reasons. *Schatz v. Rosenberg*, 943 F.2d 485, 492 (4th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992), involved a defendant law firm that "did not ... prepare any solicitation documents. In fact, [the parties to the transaction] worked out the details of the purchase before involving attorneys for either side." Because of this, the court found that the defendant firm "did no more than 'paper the deal' or act as scrivener for [the client]." Id. at 497. CS & O's preparation of solicitation documents is a distinguishing factor in the present case.

The court in *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1128 (5th Cir.1988), *vacated on other grounds*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989), found allegations against a law firm insufficient because the scienter requirement was not met ("Aroused suspicions,

however, do not constitute actual awareness ..."). In essence, the defendant law firm was alleged to have failed to sufficiently investigate a bond offering, not to have possessed actual knowledge of material omissions, as is the case here.

In *Latigo Ventures v. Laventhol & Horwath*, 876 F.2d 1322, 1327 (7th Cir.1989), the claim against an accounting firm failed primarily because the plaintiff did not sufficiently allege reliance. The plaintiffs did "not claim to have relied either directly or indirectly on any reports by Laventhol & Horwath in deciding to buy [the stock]." *Id.* Reliance is alleged by the plaintiffs here.

*Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490 (7th Cir.1986) reviewed a motion for summary judgement, not a motion to dismiss, and thus analyzed claims based of a set of undisputed facts, facts which differ markedly from the allegations in plaintiffs' complaint. Furthermore, the defendants in *Barker* were not alleged to have had actual knowledge of inaccuracies in selling documents. "A plaintiff's case against an aider, abetter, or conspirator may not rest on a bare inference that the defendant 'must have had' knowledge of the facts. The plaintiff must support the inference with some reason to conclude that defendant has thrown in his lot with the primary violators." *Id.* at 497. Plaintiffs here do more than allege that defendants "must have known" of H.E.F.'s reliance of insider sales, they support their allegation of knowledge by alleging in the complaint that a letter from H.E.F. received by CS & O provided notice that the Project was in trouble. While the actual significance of the letter is subject to dispute, a factual determination is not appropriately resolved by virtue of a motion to dismiss, which must take all of plaintiff's factual allegations as true.

at 97. The Court agrees with the plaintiffs that the allegation of substantial assistance is sufficient.

While it is true that "[s]everal cases in other circuits refuse to impose aiding or abetting liability for inaction except when there exists an independent duty to disclose," *IIT* 619 F.2d at 926–27, this is not a case of inaction. Contrary to CS & O's assertions, drafting a document that contains material omissions is not "inaction" as the term is used in the case law.

A number of the cases highlight this distinction. *Wessel v. Buhler*, 437 F.2d 279 (9th Cir.1971), a case quoted in *IIT* and relied on by CS & O, involved an accountant who did not prepare the allegedly fraudulent prospectus and was not responsible for the figures contained in it. *Id.* at 281. Rather, he had prepared three nonpublic statements which possibly were used by others in preparing the prospectus. *Id.* at 283. The plaintiff argued that the accountant aided and abetted the primary fraud by not disclosing his knowledge when he became aware of deficiencies in the prospectus. It was in response to this fact pattern that the court in *Wessel* held that liability cannot be based solely on inaction absent a duty to disclose.

*IIT* discussed inaction in the context of Arthur Andersen's lack of disclosure with respect to improprieties unrelated to the parts of the prospectus it had prepared. *IIT*, 619 F.2d at 927. It did not hold that preparing a prospectus was "inaction."

In *In re Gas Reclamation, Inc.*, 659 F.Supp. 493, 504 (S.D.N.Y.1987), the court also discussed the substantial assistance prong of aider and abettor liability. With respect to one group of defendants, the court concluded that "the Investors have alleged active wrongdoing by these defendants satisfying the substantial assistance requirement. These include *inter alia*, allegations that the defendants reviewed and approved the first [private placement memorandum], devised the marketing and financing scheme ... and

engaged in atypical financing transactions." *Id.* at 504. With respect to Peat Marwick, which had its 12(b)(6) motion granted because it was not found to have substantially assisted the primary fraud, the court found that "[plaintiffs] do not allege ... that Peat Marwick **was in any way associated** with the only disclosure document specifically referred to in the [complaint]." *Id.* (emphasis added). The aiding and abetting claim against Peat Marwick was thus held to be premised on inaction.

In *Armstrong v. McAlpin*, 699 F.2d at 91, aiding and abetting claims against parties who were aware of the primary churning violation and did not intervene were held to be insufficient because "awareness and approval, standing alone, do not constitute substantial assistance." *Id.* The allegation of CS & O's awareness does not stand alone, but stands in conjunction with its alleged preparation of the Amended Offering.

In sum, the substantial assistance alleged by plaintiffs here is not inaction. It is CS & O's affirmative conduct of preparing the offering memorandum and its amendment. *See Andreo*, 660 F.Supp. at 1366 ("the primary fraud allegedly was substantially assisted by [defendant law firm's] inclusion of false information and/or omission of material information from drafts of offering memoranda and tax opinions. Thus the complaint sufficiently alleges the ... third element[ ] of aiding and abetting liability").

Because the Court finds that the Powells successfully state a claim for aiding and abetting liability under Fed.R.Civ.P. 12(b)(6), that part of the Magistrate Judge's recommendation dismissing the Powells federal securities law claim is rejected.

## III. MOTION FOR SUMMARY JUDGMENT

Because this Court rejects the Magistrate Judge's recommendation with respect to defendant's motion to dismiss under Rule 12(b)(6), the defendant's motion for summary judgement must be addressed.[7] CS & O

---

**7.** Defendant CS & O filed both a motion to dismiss, based on the insufficiency of the plaintiffs' claim, and a motion for summary judgement, based on an affirmative statute of limitations defense. The Magistrate Judge's Report and Recommendation granted the defendant's motion for summary judgement and motion to dismiss, but did not discuss the motion for summary judgement in the body of the report. Thus

argues that the plaintiffs are barred from asserting their claim under the statute of limitations set forth in *Lamps, Pleva, Lipkind, Prupis and Petigrow v. Gilbertson et al.* — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), because they did not file their complaint within one year of the time when they should have discovered the fraudulent conduct.

The plaintiffs contend that the complaint was timely because it was filed within one year of their discovery of fraud and further contend that the undisputed facts do not support the defendant's assertion that the fraud should have been discovered earlier.

■ A defendant may gain summary judgement based on securities fraud statute of limitations only "when uncontroverted evidence irrefutably demonstrates" that fraud should have been discovered. *Mosesian v. Peat, Marwick, Mitchell & Co,* 727 F.2d 873, 877 (9th Cir.), *cert. denied,* 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984). "The court will refuse to grant summary judgement for defendant if there is an issue of fact as to when the limitations period began." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d.* § 2743 (1983).

Both parties agree that the applicable statute of limitations is set forth in section 9(e) of the 1934 Act, 15 U.S.C. § 78i(e) [8], which provides:

> No action shall be maintained to enforce any liability created under this section, unless brought within one year after discovery of the facts constituting a violation and within three years of such violation.

■ The limitations period of a federal securities claim is triggered when the plaintiff discovered or should have discovered the fraudulent conduct. *IIT,* 619 F.2d at 929.

The disputed issue is whether the plaintiffs should have discovered the fraud more than one year prior to February 25, 1991, the day the present lawsuit was filed.

■ In support of their argument that the plaintiffs should have discovered the fraud earlier, CS & O points to the plaintiffs closing, which took place on November 22, 1989. Because the security sold in this transaction was real estate, CS & O asserts that plaintiffs must have known, by virtue of a title search conducted pursuant to closing, that: (1) the number of units sold at the project was less than had been represented; and (2) that a lien had been placed on the project by Pizzagalli Construction Company. Further, CS & O argues, plaintiffs should have known of the alleged fraud in January of 1990 when they did not receive a distribution from the "cash flow guaranty" fund.

Plaintiffs counter these arguments by asserting that: (1) the title search was conducted only for their unit in the project and thus did not reveal the status of other sales; (2) the existence of the lien was not evidence of fraud because it was explained, at the time of closing, as a run-of-the-mill payment dispute, soon to be discharged, which did not affect the viability of the project; this explanation was consistent with the plaintiffs' own experience in the construction field; and (3) they were unaware of the absence of payment from the "cash flow guaranty" fund.

Based on the above assertions, there can be no question that a factual dispute exists. First, there is a factual dispute over what the plaintiffs learned in their title search incident to closing. Second, there is a factual dispute over the plaintiffs knowledge of the January 1990 missed payment of the "cash guarantee fund." The only undisputed fact is the plaintiff's knowledge of the lien on Project, and

---

the Court will review the motion for summary judgement for the first time in this opinion.

**8.** CS & O relies of *Lamps, Pleva, Lipkind, Prupis and Petigrow v. Gilbertson,* — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) to support its position. However, the retroactive impact of this decision was limited by an act of Congress, which directed courts, when considering implied private actions brought under 10(b) filed before June 19, 1991, to apply the statute of limitations applicable in the jurisdiction on June 19, 1991. 102 P.L. 242, 473; 105 Stat. 2236 (December 19, 1991). This legislative override of *Lamps* is of no significance here, however, because *Ceres Partners v. GEL Associates, et al.* 918 F.2d 349 (2d Cir.1990) adopted the federal statute of limitations for private 10(b) actions in the Second Circuit prior to the filing of this action and plaintiff does not argue that a "borrowed" state statute of limitations should apply.

the circumstances surrounding that fact are disputed. Thus it is not at all clear from the facts before the Court that the fraud should have been discovered before February 25, 1990, one year before the case was filed. Defendant's motion for summary judgement must therefore be denied.

### IV. Motion To Amend The Complaint

As to plaintiff's objection to the recommended denial of their motion to amend their Complaint, this Court agrees with the Magistrate Judge's analysis and adopts the recommendation.

### V. Motion To Compel

Plaintiffs motion to compel discovery against CS & O was mooted by the Magistrate Judge's recommendation that CS & O's motions for summary judgement and dismissal be granted. Because this Court's opinion declines to adopt the Magistrate Judge's recommendation with respect to these motions, the motion to compel must now be addressed.

Plaintiffs seek to discover communications between CS & O and H.E.F. that relate to the Project. CS & O argues that discovery of such documents is improper as a violation of the attorney-client privilege, the attorney work-product privilege, and the Vermont Code of Professional Responsibility, DR 4–101(A) and (B)(1). Each of these contentions will be addressed separately.

### A. Attorney–Client Privilege

■ Both parties agree that the attorney-client privilege in this case belongs to CS & O's client, H.E.F. Partnership. What is actually in dispute is whether H.E.F. has waived the attorney-client privilege that would customarily apply to the documents at issue. See 8 Wigmore, Evidence § 2327 (McNaughton rev. 1961) ("The privilege is designed to secure the client's confidence in

the secrecy of his communications ... hence the privilege is not violated by receiving such disclosures as the client by his own will permits to be made.")

The client in this case has apparently already allowed plaintiffs' counsel access to all documents relating to the present action, including correspondence between H.E.F. and CS & O.[9] This decision by H.E.F. surely functions as a waiver of any attorney-client privilege that may have existed prior to disclosure. Indeed, the absence of a privilege may be gleaned from the fact that this Court has previously granted Plaintiffs' Motion to Compel Discovery Against Defendant, H.E.F. Partnership (Paper 51). Because the documents at issue are discoverable from H.E.F., there is no issue of secrecy and CS & O can also be compelled to produce them. 8 Wigmore, Evidence § 2307 (McNaughton rev. 1961) ("It follows then, that when the client himself would be privileged from production of the document ... the attorney having possession is not bound to produce.... On the other had, if the client would be compellable to produce ... then the attorney is equally compellable, if the document is in his custody, to produce under the appropriate procedure.")

### B. Work Product Doctrine

■ Defendant's objections based on the attorney work-product privilege are wholly without merit. Fed.R.Civ.P. Rule 26(b)(3) protects documents prepared in anticipation of litigation. The documents at issue relate to a securities offering; no work-product immunity exists for these purposes. See 8 Charles Wright & Arthur Miller, Federal Practice and Procedure § 2023 (1970) ("There is no work product immunity for documents prepared in the regular course of business rather than for the purpose of litigation.")

9. In Plaintiffs' Motion to Compel Discovery against H.E.F., plaintiffs asserted that: "Prior to the commencement of this litigation, a representative of H.E.F. communicated to Plaintiff, John Powell that H.E.F. would make its files relating to the Inn at Essex available for Mr. Powell's attorney's to review. Said representative was fully aware that this review would be undertaken to determine whether to file suit against certain entities, including H.E.F.. In order to perform the reasonable inquiry necessary to file our Complaint, we accepted the offer and reviewed some files on or about January 14, 1991." Plaintiffs' Motion to Compel Discovery Against Defendant, H.E.F. Partnership, page 2. H.E.F. did not counter this assertion and did not, in fact, oppose the motion to compel.

CS & O also attempts to fuse the work product doctrine with DR 4–101 of the Vermont Code of Professional Responsibility, apparently in an attempt to expand immunity to all attorney work-product, litigation-related or not. This attempt fails for the reasons set forth below.

### C. *Vermont Code of Professional Responsibility*

CS & O contends that compliance with plaintiffs' discovery requests would violate the Vermont Code of Professional Responsibility. CS & O relies on the following obligation, which is set forth as DR 4–101(A) and (B):

(A) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would likely be detrimental to the client.

(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

As previously discussed, the documents requested are not covered by the attorney-client privilege. Consequently, they cannot be deemed a "confidence" under the terms of the Rule. H.E.F.'s own decision to allow plaintiffs' counsel access to all its documents indicates that the documents are not covered as "information ... that the client has requested be held inviolate." Furthermore, the fact that the documents requested are already subject to discovery pursuant to this Court's order precludes the possibility that disclosure of the same items by CS & O would be embarrassing or detrimental to H.E.F. Thus the documents cannot be deemed a "secret" under the rule. Again, CS & O would not be revealing anything that H.E.F. itself has not already agreed to, or been compelled to, reveal.

Because CS & O's arguments based on attorney-client privilege, the work product doctrine, and the Vermont Code of Professional Conduct are each without merit, the Court finds no reason why the requested documents should not be produced and grants the plaintiffs' motion to compel discovery.

### CONCLUSION

The Magistrate Judge's Opinion and Order, as modified, is hereby ADOPTED in part and REJECTED in part. Defendant CS & O's motion for summary judgement (Papers 54 and 73) is hereby DENIED. Defendant CS & O's motion to dismiss (Papers 54 and 73) is hereby DENIED as to the federal securities fraud claim and DENIED as to the Vermont securities fraud claim. Plaintiffs' motion to amend their Complaint (Paper 79) is DENIED. Plaintiff's motion to compel discovery against defendant Carroll, Sussman, & Obuchowski (Paper 59) is GRANTED.