**EMPLOYERS INSURANCE OF WAUSAU and Federal Insurance Company, Plaintiffs,**

v.

**MUSICK, PEELER, & GARRETT, a Partnership; Leonard Castro, an Individual; Robert Schuchard, an Individual; K.M.G. Main Hurdman, a partnership, Peat Marwick, Main & Co., a Partnership; J.H. Cohn & Co., a Partnership; Ed Bacani, an Individual; Robert Torkar, an Individual; Does 1 through 100; and Roes 1 through 300, Inclusive, Defendants.**

No. 89–0705–J (BTM).

United States District Court, S.D. California.

Nov. 22, 1994.

David Jordan Zubkoff, Seltzer, Caplan, Wilkins and McMahon, San Diego, CA, Larry Goldberg, Nagler and Schneider, Beverly Hills, CA, Gerald L. McMahon, Seltzer, Caplan, Wilkins and McMahon, San Diego, CA, Lawrence H. Nagler, Nagler and Associates, Beverly Hills, CA, for plaintiffs.

Charles A. Bird, Charles A. Danaher, Luce, Forward, Hamilton and Scripps, San Diego, CA, Robert G. Steiner, Luce, Forward, Hamilton & Scripps, San Diego, CA, for Musick, Peeler, & Garrett, Leonard Castro, Robert Schuchard.

William J. Reifman, Mayer, Brown and Platt, Los Angeles, CA, for KMG Main Hurdman.

William J. Reifman, Mayer, Brown and Platt, Los Angeles, CA, Stanley J. Parzen, Mayer, Brown and Platt, Chicago, IL, for Peat, Marwick, Main & Co.

Mark I. Schlesinger, Joel A. Chernov, Alvin M. Stein, New York City, for J.H. Cohn & Co., Ed Bacani, Robert Torkar.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, DENYING MOTION TO STRIKE AND GRANTING REQUEST TO TAKE JUDICIAL NOTICE

JONES, District Judge.

## I. BACKGROUND

This case is an action for contribution and equitable indemnity brought by insurers who paid out a $13 million settlement in the Cousins Home Furnishings, Inc. securities litigation in the late 1980's. The insurers brought this action against attorneys and accountants who were not named as defendants in the Cousins action. The insurers claim that the attorneys and accountants are joint tortfeasors along with the parties that they insured and on whose behalf they paid the settlement amount.

The district court dismissed the case in 1990, holding that the insureds had paid only their "fair share" of the settlement, so that contribution would not be allowed. The Ninth Circuit reversed, 954 F.2d 575 (9th Cir.1992), holding that the "fair share" that must be paid by settling defendants is not necessarily equal to the amount of the settlement when the parties from whom contribution is sought were not parties to the original suit. The Supreme Court granted certiorari for the narrow purpose of resolving a circuit split about whether a cause of action for contribution was allowed under section 10b–5. The Supreme Court held that contribution is permitted. —— U.S. ——, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993). In so holding, the court distinguished between theories of liability under section 10(b) [e.g. aiding and abetting] and theories of recovery [e.g. contribution]. Id. at ——, 113 S.Ct. at 2088.

The second amended complaint now before the court alleges principally that the attorneys and accountants were the actual architects of the prospectus and registration statements, and that these documents contained material misrepresentations and omissions. It asserts federal claims under section 10(b)/Rule 10b–5 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5, and section 11 of the Securities Act of 1933, 15 U.S.C. § 77k. It also asserts several pendant state law claims for fraud, negligent misrepresentation, and various violations of the California Corporations Code.

Defendants now move to dismiss the second amended complaint, requesting that the court take judicial notice of the securities offering documents. In the alternative, if the court does not take judicial notice, defendants request that the motion be treated as one for summary judgment.

The court grants the request to take judicial notice of the securities offering documents. Defendants cite sufficient authority holding that it is proper to take judicial

notice of offering documents for the purpose of a motion to dismiss. Thus, this motion will be analyzed as a motion to dismiss.

## II. *MOTION TO DISMISS STANDARD*

 Under Federal Rule of Civil Procedure 12(b)(6), the court will grant a motion to dismiss only when it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Moore v. City of Costa Mesa,* 886 F.2d 260, 262 (9th Cir.1989). In reviewing a motion to dismiss the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *Id.* The court need not accept as true allegations that contradict facts which have been judicially noticed by the court. *Mullis v. U.S. Bankruptcy Court,* 828 F.2d 1385, 1388 (9th Cir.1987).

## III. *ANALYSIS*

Defendants move to dismiss each of the 18 claims in the second amended complaint. Defendants present several alternative arguments. The court will reach only those arguments that are necessary to a resolution of this motion.

### A. *Subrogation*

Defendants argue that after the narrow construction of section 10(b) by the Court in *Central Bank of Denver v. First Interstate Bank,* —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), the court should not imply a right of contribution by an insurer who is subrogated to a right of contribution. Defendants argue that, instead, the right of contribution approved by the Supreme Court in its opinion in this case should apply only to defendants in an action who themselves seek contribution from joint tortfeasors.

 The court rejects this argument. For several reasons, the court holds that a subrogated party may bring an action for contribution under the federal securities laws.

First, the court recognizes that there is no express authority in the securities laws for actions brought by subrogees. However, it is consistent with the Supreme Court's opinion in this case and in *Central Bank,* to allow

subrogees to sue for contribution. Allowing contribution actions by subrogees requires the court to imply only a theory of *recovery* under the securities laws. It does not create any new theories of liability.

In its opinion in this case, —— U.S. ——, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993), the Supreme Court signaled that it was willing to effectuate the remedial purposes of the securities laws by expanding theories of recovery to those that were not explicit in the statute. "Even though we are being asked to recognize a cause of action that supports a suit against these parties, the duty is but the duty to contribute for having committed a wrong that courts have already deemed actionable under federal law." *Id.* at ——, 113 S.Ct. at 2088. In contrast, in *Central Bank,* the Supreme Court made clear that theories of *liability* would not be expanded these beyond those that were explicit in the statute. "It is inconsistent with settled methodology in § 10(b) cases to extend liability beyond the scope of conduct prohibited by the statutory text." —— U.S. at ——, 114 S.Ct. at 1448.

In the case of contribution actions brought by an insurer rather than the original joint tortfeasor, only a theory of recovery is at issue. Thus, the court may, consistent with Supreme Court policy regarding theories of recovery, allow plaintiffs to pursue their contribution action as subrogees.

Second, defendants argue that subrogation is a type of indemnification. They contend that the Ninth Circuit has not permitted indemnification in the context of securities laws, *see e.g., Riverhead Sav. Bank v. National Mortgage Equity Corp.,* 893 F.2d 1109, 1116 (9th Cir.1990). It follows, they argue, that suits based on subrogation should also not be allowed. However, this argument is not persuasive. There is not a direct analogy between (1) whether indemnification is allowed and (2) whether an insurer, *already subrogated* based on an insurance contract, may bring a suit seeking contribution of a *portion* of the settlement.

 Indemnification includes the 100% shifting of liability from one party to the other. Contribution is the recovery of part

of the cost of liability from a joint tortfeasor. Indemnification is not allowed in securities law because, as a matter of policy, a liable party should not be completely relieved of responsibility through an indemnity arrangement. However, this policy should not prevent a party from buying insurance which covers the responsibility, and which then gives the insurer the same right to seek contribution as the insured would have.

Finally, both the Ninth Circuit and the Supreme Court discussed the facts of this case, including the fact that it was brought by a party *subrogated* to the rights of a joint tortfeasor. Neither court commented that it was a possible issue whether a *subrogated party could bring a suit for contribution.*

Based on these considerations, the court holds that a right of contribution may be pursued by plaintiffs who are subrogated to the claims of a joint tortfeasor.

## B. *Claims for Equitable Indemnity Not Permitted for Federal Claims*

■ The 2nd, 4th, and 6th claims are alternate theories of recovery under the three federal claims for contribution brought under sections 10(b) and 11. These three claims assert state law theories of recovery for equitable indemnity based on violations of federal securities laws. However, the Ninth Circuit has precluded any theory under which this state law theory of recovery could be applied to federal securities law.

First, *Laventhol, Krekstein, Horwath & Horwitch v. Horwitch,* 637 F.2d 672, 676 (9th Cir.1980), *cert. denied* 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981), held that indemnification is not available under federal securities laws, though contribution is. Thus, plaintiffs are not able to bring a claim for indemnity based on a federal securities law claim.

Second, *Franklin v. Kaypro Corp.,* 884 F.2d 1222, 1226 (9th Cir.1989), *cert. denied* 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990), made it clear that "the right to contribution is governed by federal law." Thus, plaintiffs cannot argue that California's type of equitable indemnity, which allows for less than 100 percent indemnity, is merely anoth-

er type of contribution permitted by the securities laws. The federal type of contribution, outlined by the Supreme Court in this case, is the only type available for the federal securities claims. Thus, the 2nd, 4th and 6th claims are dismissed.

## C. *Claims That Settlement Could Not Have Covered*

■ Several of plaintiff's state law claims for contribution cannot stand because it is legally impossible for the insurer to have paid out a portion of the $13 million to settle those claims. Under California law, an insurer can assert a right of subrogation only as to those claims on which he was required to make payment as part of the insurance contract. If the payment was voluntary, then the insurer cannot seek to recover from a third party under the theory of subrogation. *See Fireman's Fund Ins. Co. v. Maryland Casualty Co.,* 21 Cal.App.4th 1586, 1598, 26 Cal.Rptr.2d 762 (1994). An exception applies when the insurer denies coverage but still pays on good faith—a situation not alleged here. *See id.*

■ The plaintiff insurer in this case could not have been required by insurance contract to pay out any of the $13 million for state law claims involving intentional torts such as fraud or negligent misrepresentation. Under California Civil Code 1688, Insurance Code 533 and the case law interpreting those provisions, insurance may not indemnify anyone from fraud or from negligent misrepresentation. *Dykstra v. Foremost Ins. Co.,* 14 Cal.App.4th 361, 366, 17 Cal.Rptr.2d 543 (1993) (negligent misrepresentation); *see also, St. Paul Fire & Marine Ins. Co. v. Weiner,* 606 F.2d 864, 870 (9th Cir.1979) (discussing California Codes and cases holding that an insurer may not indemnify for fraud); *Allstate Ins. Co. v. Hansten,* 765 F.Supp. 614, 616 (N.D.Cal.1991) ("Under California law, no contractual agreement may indemnify anyone from his own fraud.... Negligent misrepresentation is included within the definition of fraud."). Thus, since the payment for these claims was voluntary as a matter of law, the insurer cannot seek subrogation on those claims. As a result the

7th, 8th, 9th, 13th, 14th, and 15th claims are dismissed.

The 12th and 17th claims are also dismissed under this theory. These claims proceed under California Corporations Code 1507, which covers (1) publishing a false report "knowing it to be false," (2) making a false entry in a corporate books "knowing such entry is false" and (3) altering an entry in corporate books "with intent to deceive." These are all willful misdeeds which cannot be covered by insurance under California law.

## D. State Law Claims

### 1. Federal common law does not govern state law equitable indemnity claims

Defendants argue that federal contribution principles should govern even the state law claims brought as part of a federal securities action. According to their theory, equitable indemnity would be unavailable for state law claims as it is for federal securities law claims. They claim that this approach is supported by *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1226 (9th Cir.1989), *cert. denied*, 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). However, *Franklin* does not lend solid support. Rather, *Franklin*'s holding is unclear about whether federal common law governs contribution in *both* state and federal claims.

■ The court holds that federal common law regarding the availability of equitable indemnity governs only federal claims. Comments made in *Franklin* support such a reading. *Franklin* states that had it adopted a different rule and decided to use the forum state law to determine contribution, then "[f]ederal and state claims in a given lawsuit [could] be decided uniformly." *Id.* at 1228. This would imply that under the approach that *Franklin* does adopt, federal and state laws will be decided on *different* theories of contribution. Thus, claims for equitable indemnity for the state law claims will be permitted to stand to the extent that state law claims remain after the discussion below.

### 2. California Corporations Code 25504.1 and .2

The 10th, 11th and 16th claims are brought under California Corporations Code 25504.1 and 25504.2. Defendants argue that the liability created by California Corporations Code 25504.1 and 25504.2 is a type of secondary liability that is not permitted to be asserted in an action for subrogation.

■ However, this argument misreads the cases on subrogation. Defendants claim subrogation is not available when the parties that the insured is subrogated to, in this case the defendants in the Cousins securities litigation, are the primarily liable parties. However, the cases that defendants cite to support this proposition are not on point. *Caito v. United California Bank*, 20 Cal.3d 694, 704, 144 Cal.Rptr. 751, 576 P.2d 466 (1978); *Grant Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1048 (2d Cir.1992). Rather, these cases hold that a subrogee, in this case the insurer, must not *itself* be primarily liable. Further, the cases deal with when equitable subrogation may be invoked, an issue that is not present in this case, since subrogation arose as a result of a contractual provision and did not need to be equitably created. Thus, the 10th, 11th and 16th claims cannot be dismissed on such a theory.

Defendants' second argument for dismissing the claims based on California Corporations Code 25504.1 and 25504.2 is that the complaint does not sufficiently plead privity between the subrogors (the insureds) and the stock purchasers.

■ Sections 25504.1 and 25504.2 create liability for those who assist in the violation of section 25401. A violation of section 25401 requires privity between the seller of a secured instrument and a purchaser. It is limited to actual sellers. Thus, "because the causes of action provided for in sections ... 25504.1 and 25504.2 are by their terms derived from section 25401, a failure to show strict privity will defeat these derivative claims." *Lubin v. Sybedon Corp.*, 688 F.Supp. 1425, 1453 (S.D.Cal.1988); *see also, Mirkin v. Wasserman*, 5 Cal.4th 1082, 1104, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993) ("the Legislature ... knew how to write a statute

conditioning liability on privity" (citing section 25401)).

Thus, the question is whether the complaint pleads privity between the insureds and the purchasers. Nowhere does the complaint state that the insureds were the persons who directly sold the securities to the investors. Thus, the complaint does not contain the necessary allegation that the defendants materially assisted persons who were in privity with stock purchasers. The 10th, 11th and 16th claims are dismissed, without prejudice.

### 3. *Negligent misrepresentation*

The 18th claim is against the attorney defendants for negligence in drafting the prospectus to include misrepresentations. Defendants argue that the negligence claim must be dismissed because, as a matter of law, they cannot have had a duty to the investors. ·

In *Goodman v. Kennedy*, 18 Cal.3d 335, 134 Cal.Rptr. 375, 556 P.2d 737 (1976), the California Supreme Court held that an attorney did not owe a duty of care to someone who purchased stock from a client whom the attorney had negligently advised about the sale. The attorney had not communicated the advice to the stock purchaser and thus did not owe the purchaser a duty of care. The court contrasted the situation with *Roberts v. Ball, Hunt, Hart, Brown, & Baerwitz*, 57 Cal.App.3d 104, 128 Cal.Rptr. 901 (1976), where the attorney's opinion letter was communicated directly to the plaintiff so that there could be a duty of care.

■ The facts alleged in the complaint raise a situation more similar to *Roberts*. The attorney defendants are alleged to have drafted the prospectus which was relied on by the investors. In such a case, there would be a duty of care. *See Lubin v. Sybedon Corp.*, 688 F.Supp. 1425, 1455 (S.D.Cal.1988) (holding that attorney's representations communicated to plaintiff were more similar to *Roberts* than *Goodman*.) Thus, the 18th claim will not be dismissed.

### E. *Federal Law Claims*

#### 1. *Rule 10b–5 liability*

■ The complaint asserts claims against both the attorney and accountant defendants under section 10(b) and its companion Rule 10b–5. The Supreme Court's decision in *Central Bank*, —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), negates all secondary liability under Rule 10b–5, except control person liability, which is not alleged here. Thus, to state a claim under Rule 10b–5, plaintiffs must properly allege *primary* liability by the attorneys and accountants who participated in drafting the prospectus. Formerly, such allegations would have more easily been pled as secondary liability. Plaintiffs now argue that the concept of primary liability can encompass the defendants' alleged conduct.

■ The claim for primary liability against both the attorneys and accountants proceeds under the portion of 10b–5 which makes it illegal to make an "untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 CFR § 240.10b–5(b). The court holds that plaintiffs have pled an adequate case of primary liability under section 10(b) against both the accountant and attorney defendants. .

#### a. *Attorney liability under 10b–5*

■ The 1st claim in the second amended complaint is against the attorney defendants under Rule 10b–5. It is based principally on the theory that the attorneys drafted the prospectus which contained misrepresentations and omissions. Defendants argue that this claim cannot be maintained because the claim is in fact based solely on the attorney's failure to disclose, and does not meet the requirements necessary to plead a 10b–5 violation based on failure to disclose. In a failure to disclose case, the defendant will be liable only if there was a duty to disclose. *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980).

■ Plaintiffs and defendants disagree on (1) whether this is a failure to disclose

case and (2) if it is, whether the attorneys had a duty to disclose to the investors. As explained below, the court's resolution of the first question will be dispositive of the issue: this is not a case involving allegations of failure to disclose.

The court holds that the analysis for a failure to disclose as set forth in *Chiarella* is meant to apply to those situations where the defendant has remained completely silent, rather than to those situations, described in Rule 10b–5 where a defendant has omitted "to state a material fact necessary in order to make the *statements made,* in the light of the circumstances under which they were made, not misleading." 17 CFR § 240.10b–5(b) (emphasis added). In this case, the complaint alleges that the attorney defendants drafted the entire prospectus which contained misrepresentations, based in part on omission, but arising out of an overall body of representations made in the prospectus. Such allegations are not to be characterized as a failure to disclose, but as affirmative misrepresentations or omissions described under Rule 10b–5(b). Other courts agree that plaintiffs did not need to show a duty to disclose when the defendant law firm was alleged to have participated in drafting offering documents containing material omissions. *See Powell v. H.E.F. Partnership,* 835 F.Supp. 762, 768 (D.Vt.1993) and cases cited therein.

*Schatz v. Rosenberg,* 943 F.2d 485 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992), cited by defendants, is not to the contrary. In that case, the court held that absent a duty to disclose, a law firm could not be liable under Rule 10b–5 for failing to "tattle" on their clients. The *Schatz* court specifically pointed out that the case was distinguishable from those where, as is alleged in this case, affirmative misrepresentations were made in the solicitation materials prepared by the attorneys.

Further, a recent statement by the Ninth Circuit in *In re Software Toolworks Ins. Securities Litigation,* 38 F.3d 1078, 1081 (9th Cir.1994), supports the proposition that a secondary actor may be primarily liable under section 10(b) when the actor's alleged participation consists mainly of drafting and editing an offering document. *Id.* at 1090, n. 3. (complaint alleged *primary* violation by accountant who prepared and edited a letter to the SEC, so that claim would be allowed to stand after holding in *Central Bank* doing away with secondary liability.). This holding is consistent with an earlier Ninth Circuit statement that a secondary actor (an accountant) "may be liable for direct violation of the rule if its participation in the misrepresentation is direct and if it knows or is reckless in not knowing that the facts reported in the prospectus materially misrepresent the condition of the issuer." *S.E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1312 (9th Cir.1982).

Thus, the 1st claim against the attorneys for contribution under section 10(b) will not be dismissed.

b. *Accountant liability under Rule 10b–5*

The 3rd claim is against the accountant defendants for contribution based on violations of Rule 10b–5. As with the attorney defendants, plaintiffs allege that the accountants were architects of the prospectus which contained specific misrepresentations attributable to them.

■ Defendants first contend that the claim must be dismissed because an accountant may only be primarily liable under section 10(b) for statements made in reports certified by the accountant. However, defendants cite no persuasive or binding authority for this proposition. Rather most courts apply a much more flexible test to determine if an accountant has been sufficiently involved in an offering to be considered a primary actor under section 10(b). For example, as discussed above, the Ninth Circuit has recently discussed when an accountant may be primarily liable. *In re Software Toolworks Ins. Securities Litigation, supra,* stated that an accountant who prepared letters to the SEC played a "significant role" and thus was able to be sued as a primary actor. Though defendants make much of the fact that the accountants in *Software Toolworks* were named in one of the documents in question, the court does not read that case to create the rigid rule that an accountant must actually be named in a document to be liable as a

primary actor. Thus, the court holds that for the purposes of this motion to dismiss, plaintiffs have stated a claim of primary liability under section 10(b) against the accountants.

■ Second, defendants attack the section 10(b) claim against the accountants, arguing that it does not state fraud with particularity as required by Federal Rule of Civil Procedure 9(b). A successful section 10(b) claim requires a showing of scienter—"that defendants acted with ... 'a mental state' embracing intent to deceive, manipulate, or defraud." *In re Worlds of Wonder Securities Litigation,* 35 F.3d 1407 (9th Cir.1994). Defendants argue that the 10(b) claim must be dismissed because it does not plead facts giving rise to an inference of scienter.

■ Under Rule 9(b), the plaintiff must plead with particularity the time, place and nature of the fraud. *See Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987). The purpose of the rule is to identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Id.*

Not all elements of fraud have to meet the heightened pleading requirements of Rule 9(b). Scienter does not need to be pled with particularity; Rule 9(b) does not "require any particularity in connection with an averment of intent, knowledge or condition of the mind." *Walling v. Beverly Enterprises,* 476 F.2d 393, 396 (9th Cir.1973). However, in a case on which the Ninth Circuit has granted en banc review, the court stated, "Although Rule 9(b) allows scienter to be pleaded generally, courts have required that the facts pled provide a basis for *a strong inference of fraudulent intent* [citing out of circuit cases]" *In re GlenFed Securities Litigation,* 11 F.3d 843, 848 (9th Cir.1993) *rehearing en banc granted* (Feb. 28, 1994) (emphasis added). This requirement is inconsistent with prior Ninth Circuit law which has required only particularity as to time, place and manner. *See Walling, supra.* Given the conflicting case law and present review of this issue by the Ninth Circuit en banc, the court will follow more established Ninth Circuit precedent and will not require that scienter be pled with particularity. Rather, arguments

regarding the necessary showing of scienter can be raised at the summary judgment stage of the litigation.

Defendants further contend that the complaint does not sufficiently plead facts that could establish reliance. However, the complaint does sufficiently allege several theories of reliance which suffice for the purposes of section 10(b).

Thus, the section 10(b) claim, (the 3rd claim), against the accountants will not be dismissed.

### 2. *Accountant liability under section 11*

■ Section 11 of the Securities Act of 1933 creates liability for providing materially false and misleading information in a registration statement. An accountant cannot be held liable under section 11 unless the materially misleading information "purports to have been prepared or certified by him." 15 U.S.C. § 77k(a)(4). The financial statements prepared and certified by the accountants for the years 1981–1983 are included in the prospectus and registration statement. Plaintiffs allege that these contain material misrepresentations. If proven, this would state a violation of section 11.

■ Defendants argue that the complaint fails to plead the necessary materiality of the misstatements and thus must be dismissed. A misrepresentation is material if a reasonable investor would consider it important in making a decision. *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (stating materiality standards under Section 10(b)). A recent Ninth Circuit case held that the determination of materiality at issue in that case was better made on the kind of record which summary judgment affords. *In re Wells Fargo Securities Litigation,* 12 F.3d 922, 930 (9th Cir. 1993). The court finds such an approach appropriate in this case as well.

The facts alleged in the complaint could state a material misrepresentation. The use of the written order basis of revenue recognition described in the complaint and the other nonstandard accounting practices changed on the eve of the offering might be shown to

have made a material difference to a reasonable investor. Plaintiffs should be permitted to try to produce sufficient evidence showing that the misrepresentations were material. The court needs more of a foundation than the bare offering materials to determine if a certain accounting practice could be a material misrepresentation. Thus, the 5th claim for relief will not be dismissed.

### IV. *MOTION TO STRIKE*

Several of the accountant defendants move to strike certain allegations from the complaint. Their main arguments are (1) that some of the facts alleged fail to state a cause of action after the holding in *Central Bank,* —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), and (2) that contribution should not be allowed unless the identical theories of liability were alleged against a joint tortfeasor.

The court denies the motion. A motion to strike brought under Federal Rule of Civil Procedure 12(f) is not the proper vehicle for accomplishing what defendants are asking the court to do. Defendants are making subtle legal arguments in their motion to strike that are out of place in such a motion. Such arguments are more appropriate for a motion to dismiss for failure to state a claim such as the court analyzed above.

Rule 12(f) allows the court to strike anything "redundant immaterial, impertinent or scandalous." However, to be impertinent or immaterial, the allegations must have no possible bearing on the controversy. All of the matters that defendants are asking to have stricken are relevant to the course of conduct set out as constituting violations of the securities laws.

### V. *CONCLUSION*

The request to take judicial notice is granted. The motion to strike is denied.

The motion to dismiss is denied in part and granted in part. The court grants the motion to dismiss as to claims 2, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18. The court denies the motion to dismiss as to claims 1, 3, 5 and 18.

**IT IS SO ORDERED.**